1  Jay Edelson*
   Rafey Balabanian*
2  Steven Lezell*
   KAMBEREDELSON, LLC
3  350 N. LaSalle Ave
   Suite 1300
4  Chicago, Illinois 60654
   Tel: (312) 589-6370
5  Fax: (312) 589-6378
   * Pro hac vice admittance to be sought
6

7  George Kelesis
   Marc Cook
8  Bailus Cook & Kelesis
   400 S. 4th St.
9  Suite 300
   Las Vegas, NV 89101
10 Tel: (702) 385-3788
   Fax: (702) 737-7712

11

12                  **UNITED STATES DISTRICT COURT**

13                       **DISTRICT OF NEVADA**

14

15 | KANIE KASTROLL, on her own behalf and on behalf of all others similarly situated, | Case No. |

16 | Plaintiff, | Judge |

17 | v. | Magistrate Judge |

18 | WYNN RESORTS, LTD. a Nevada corporation d/b/a WYNN LAS VEGAS, | |

19 | | **DEMAND FOR JURY TRIAL** |

20 | Defendant. | **CLASS ACTION** |

21

22                 <u>**CLASS ACTION COMPLAINT**</u>

23        Plaintiff, Kanie Kastroll, brings this Class Action Complaint against Defendant WYNN

24 RESORTS, LTD. d/b/a WYNN LAS VEGAS.   Plaintiff alleges as follows upon personal

25 knowledge as to herself and her own acts and experiences, and, as to all other matters, upon

26 information and belief, including investigation conducted by her attorneys.

27

28

**NATURE OF ACTION**

1.      Second-hand smoke refers to smoke from cigarettes and cigars that is exhaled or otherwise released into the atmosphere.  Non-smokers who are exposed to second-hand smoke inhale the same chemicals that smokers inhale.[1]  Second-hand smoke has been designated as a known human carcinogen (cancer-causing agent) by the U.S. Environmental Protection Agency, the National Toxicology Program, and the International Agency for Research on Cancer, as well as an occupational carcinogen by the National Institute for Occupational Safety and Health.[2]

2.      Recognizing the dangers of second-hand smoke, some casinos in Nevada have voluntarily taken measures to minimize the amount of second-hand smoke on their gaming floors.  The Bellagio Hotel and Casino, for example, has installed a high-tech air filtration system designed to minimize the amount of second-hand smoke on its casino floor.  The Palazzo Hotel and Casino built "smoke-free corridors" through its gaming area and designated fifty-percent of its casino floor as non-smoking.  WYNN LAS VEGAS, however, continues to gamble with its employees' health and welfare in order to cut costs and maintain the status quo.

3.      Despite overwhelming scientific evidence, WYNN LAS VEGAS has failed to protect the health and welfare of many of its employees who must perform their jobs while breathing in second-hand smoke.  WYNN LAS VEGAS has failed to take any measures to mitigate the levels of second-hand smoke on its casino floor.  While casino patrons are playing table games such as blackjack and roulette, employees working on the casino floor at WYNN LAS VEGAS play a different game called "dodge the smoke."  All employers have a duty to provide their employees with a safe workplace.  WYNN LAS VEGAS is breaching its duty by not taking reasonable steps to minimize the level of second-hand smoke exposure its employees face in the

---

[1] *See* Office of the Surgeon General, *available at URL* http://www.surgeongeneral.gov/library/secondhandsmoke/factsheets/factsheet1.html.  (last visited August 11, 2009).

[2] *Id.*

2

casino.  Plaintiff brings this class action lawsuit to protect the health and welfare of all casino employees at WYNN LAS VEGAS.

**EFFECTS OF SECOND-HAND SMOKE**

4.      The dangers of second-hand smoke have been acknowledged since at least 1972.[3] The Surgeon General said in a 2006 study that "[t]oday, massive and conclusive scientific evidence documents adverse effects of involuntary smoking on children and adults, including cancer and cardiovascular diseases in adults, and adverse respiratory effects in both children and adults."[4]

5.      Second-hand smoke contains more than fifty cancer-causing chemicals.[5]  Non-smokers inhale many of these chemicals when they are exposed to second-hand smoke.  The Surgeon General estimated that in the year 2005 alone, exposure to second-hand smoke killed over 3,000 non-smokers due to lung cancer and approximately 46,000 non-smokers from coronary heart disease.[6]

6.      The Surgeon General has found that exposure to second-hand smoke has immediate adverse effects on the cardiovascular systems of non-smokers and that it causes injury to the respiratory tracts of non-smokers.[7]

7.      A casual relationship also exists between exposure to second-hand smoke and odor annoyance and nasal irritation.[8]  There is also a casual connection between exposure to second-hand smoke and acute respiratory symptoms such as coughing, wheezing, chest tightness, and

---

[3] Department of Health and Human Services, The Health Consequences of Involuntary Exposure to Tobacco Smoke, A Report of the Surgeon General, iii (2006), *available at URL* http://www.surgeongeneral.gov/library/secondhandsmoke/ (follow "Executive Summary PDF" hyperlink) (last visited August 11, 2009).
[4] *Id*. at iii
[5] *Id*. at 10
[6] *Id*. at i
[7] *Id*. at iv, 9
[8] *Id*. at 13

difficulty breathing among healthy adults.[9]  Newborns whose mothers are exposed to second-hand smoke are more likely to be born with a small reduction in birth weight.[10]  Evidence also suggests a link between maternal exposure to second-hand smoke and preterm delivery.[11]

<strong>PARTIES</strong>

8.      Plaintiff Kanie Kastroll is a resident of Nevada.

9.      Upon information and belief, Defendant WYNN RESORTS, LTD. is and was at all times relevant to this action a Nevada corporation.  WYNN RESORTS, LTD. does business in Clark County, Nevada as WYNN LAS VEGAS.

<strong>JURISDICTION AND VENUE</strong>

10.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to the instant action.

11.      Specifically, the cost and value of the injunction sought exceeds $5,000,000 exclusive of interest and costs.

12.      Venue is proper before this Court under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c).

<strong>GENERAL ALLEGATIONS</strong>

13.      The gaming area at WYNN LAS VEGAS consists of table games (e.g., blackjack, craps, roulette, and baccarat), as well as slot machines and other gaming devices.

14.      Numerous employees work in the gaming area at WYNN LAS VEGAS including

---

[9] *Id.* at 13
[10] *Id.* at 11
[11] *Id.*

4

casino dealers, table games supervisors, slot floorpersons, cocktail servers, security officers, and managers.

15.     The gaming area is open for business to the public twenty-four hours a day, seven days a week.

16.     Smoking is permitted in the gaming area at WYNN LAS VEGAS twenty-four hours a day, seven days a week.

17.     Employees who work in the gaming area generally work eight-hour shifts, during which time they are continuously exposed to second-hand smoke.

18.     The management at WYNN LAS VEGAS forbids dealers in the gaming area to designate certain tables as "smoke-free."  Floor supervisors can designate tables as nonsmoking, but only at the request of a casino patron.

19.     Employees are also forbidden by WYNN LAS VEGAS to request that any customer blow smoke away from the table or ask that customers move their ashtrays.  Employees are instructed not to fan their hands at tobacco smoke.

20.     If a customer asks a dealer "do you mind if I smoke?", WYNN LAS VEGAS prefers its dealers to answer "no, not at all," even if the tobacco smoke does in fact bother the dealer and causes him or her adverse health effects.  Dealers who tell customers that second-hand smoke bothers them will likely be subject to discipline.

21.     Further, WYNN LAS VEGAS encourages its customers to smoke.  Cocktail servers bring cigars and cigarettes to customers at the gaming tables.  WYNN LAS VEGAS provides complimentary cigarettes to gamblers who continue to play at its casino.  WYNN LAS VEGAS also provides ashtrays in the gaming area, as well as provides matchbooks with the WYNN LAS VEGAS logo emblazoned on the cover.

22.     Employees at WYNN LAS VEGAS are forbidden from complaining about the

amount of second-hand smoke that they are forced to inhale and risk losing their jobs if they voice dissent.

23.     WYNN LAS VEGAS will sometimes make accommodations for casino employees who are pregnant, but only at the discretion of individual floor supervisors.   These accommodations are rare.  Thus, employees are frequently faced with a choice: quit their jobs or continue to expose themselves and their unborn children to second-hand smoke.

24.     Exposure to second-hand smoke on the casino floor at WYNN LAS VEGAS causes numerous deleterious health effects, including:

a.  red, irritated, watery eyes;

b.  coughing, sore throat, and sneezing;

c.  shortness of breath;

d.  dizziness;

e.  wheezing, tightness in the chest, and asthma;

f.  headache;

g.  nausea;

h.  excess mucus and phlegm; and

i.  ingestion of cancer-causing chemicals and toxins.

25.     WYNN LAS VEGAS is aware of the health risks posed by exposure to second-hand smoke.  WYNN LAS VEGAS posts signs in the employee areas of its casino that encourage its employees not to smoke, or to quit smoking, citing the fact that tobacco smoke is bad for their health.  Flyers are also made available to employees that carry the same message.

26.     Despite having the knowledge that second-hand smoke is damaging the health of its employees, WYNN LAS VEGAS has failed to adequately address the problem of second-hand smoke in the gaming area of its casino.  Specifically, WYNN LAS VEGAS has failed to:

6

a.  designate certain sections of the gaming area as smoke-free;

b.  restrict the times in which smoking is permitted in the gaming area;

c.  physically separate certain parts of the gaming area and designate them as smoke-free;

d.  allow dealers to have fans on their tables;

e.  allow dealers to place nonsmoking signs on their tables;

f.  install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

g.  monitor the health and welfare of its employees who are exposed to second-hand smoke and take steps to assist those adversely affected by second-hand smoke; and

h.  take other necessary steps to mitigate the dangers posed by second-hand smoke.

## ALLEGATIONS AS TO NAMED PLAINTIFF

27.  Plaintiff Kanie Kastroll works at WYNN LAS VEGAS.

28.  Ms. Kastroll performs her job duties in the gaming area at WYNN LAS VEGAS.

29.  While working at WYNN LAS VEGAS Ms. Kastroll is continually exposed to second-hand smoke.

30.  Ms. Kastroll is subject to the rules and practices of WYNN LAS VEGAS described in the "General Allegations" section of this Complaint (paragraphs 13-26).

31.  As a direct and proximate result of exposure to second-hand smoke Ms. Kastroll has suffered negative health effects, including:

a.  red, irritated, watery eyes;

b.  coughing, sore throat, and sneezing;

c.  shortness of breath;

d.  dizziness;

e.  wheezing, tightness in the chest, and asthma;

f.  headache;

g.  nausea;

h.  excess mucus and phlegm; and

i.  ingestion of cancer-causing chemicals and toxins.

32.     Ms. Kastroll suffers from asthma, and the second-hand smoke she is exposed to at WYNN LAS VEGAS exacerbates her condition.

## CLASS CERTIFICATION ALLEGATIONS

33.     Plaintiff seeks certification of a class (the "Class") under Rule 23(b)(2), defined as follows:  "All former, current, and future nonsmoking employees of WYNN LAS VEGAS who were, are, or in the future will be exposed to unsafe levels of second-hand smoke." Excluded from the Class are:  1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

34.     On information and belief, there are over one thousand members of the Class.  As such, individual joinder is impracticable.

35.     Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members.
These common questions include, but are not limited to:

(a)     Whether Defendant has a common-law duty to provide a safe workplace;

(b)     Whether Defendant has a statutory duty under N.R.S. 618.375 to provide a safe

workplace;

(c)    Whether, as part of its duty to provide a safe workplace, Defendant is required to mitigate the dangers posed by second-hand smoke;

(d)    Whether Defendant has taken adequate steps to curtail the danger of second-hand smoke;

(e)    Whether Defendant breached its duty to provide a safe workplace to its employees; and

(f)    Whether the Plaintiff and the Class are entitled to relief, and the nature of such relief.

36.    Plaintiff's claims are typical of the claims of other members of the Class.  Her claims arise out of the wrongful conduct of the Defendant and are based upon the same transactions made uniformly to Plaintiff and the Class.

37.    Plaintiff will fairly and adequately represent and protect the interests of the Class members, and she has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class.

38.    This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.  The policies of the Defendant challenged herein apply to and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**COUNT I**
**FAILURE TO PROVIDE A SAFE WORKPLACE**
**(By Plaintiff individually and on behalf of the Class)**

39.    Plaintiff realleges and incorporates the foregoing allegations as though set forth fully

herein.

40.     Defendant has a duty under common law to maintain a workplace that is in a reasonably safe condition for its employees.

41.     Defendant has breached this duty by failing to take reasonable precautions to protect its employees from exposure to second-hand smoke.

42.     Specifically, Defendant has breached this duty in the following ways:

a.      failing to designate certain sections of the gaming area as smoke-free;

b.      failing to restrict the times in which smoking is permitted in the gaming area;

c.      failing to physically separate certain parts of the gaming area and designating them as smoke-free;

d.      failing to allow dealers to have fans on their tables;

e.      failing to allow dealers to place nonsmoking signs on their tables;

f.      failing to provide protective safety gear to dealers and other casino employees;

g.      failing to install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

h.      failing to monitor the health and welfare of its employees who are exposed to second-hand smoke, and failing to take steps to assist those adversely affected by second-hand smoke; and

i.      failing to take other necessary steps to mitigate the dangers posed by second-hand smoke.

43.     As an actual and proximate result of Defendant's conduct, Plaintiff and other members of the Class have suffered and continue to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.      Enter an order enjoining the Defendant to take reasonable measures to protect its

employees from second-hand smoke;

b.    Enter an order awarding Plaintiff and the Class costs and reasonable attorney's fees associated with the prosecution of this action;

c.    Award any and all further relief provided by law that this Court deems equitable and just.

## COUNT II
## BREACH OF STATUTORY DUTY TO PROVIDE A SAFE WORKPLACE
### (N.R.S. 618.375)
### (By Plaintiff individually and on behalf of the Class)

44.    Plaintiff realleges and incorporates the foregoing allegations as though set forth fully herein.

45.    Defendant has a statutory duty, pursuant to Nevada Revised Statutes (N.R.S.) 618.375 to provide a safe workplace.

46.    N.R.S. 618.375 states in relevant part:

Every employer shall:

(1)  Furnish employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

(2)  Furnish and use such safety devices and safeguards, and adopt and use such practices, means, methods, operations and processes as are reasonably adequate to render such employment and places of employment safe and comply with all orders issued by the Division.

(3)  Post prominently in the working place all posters and information provided by the Division informing employees of their rights and obligations pursuant to this chapter.

(4)  Assign at least one person to be in charge of occupational safety and health.

(5)  Do every other thing reasonably necessary to protect the lives, safety and health of employees.

47.    Defendant has breached this duty by failing to take reasonable precautions to

11

protect its employees from exposure to second-hand smoke, a recognized hazard.

48.     Specifically, the Defendant has breached this duty in the following ways:

a.     failing to designate certain sections of the gaming area as smoke-free;

b.     failing to restrict the times in which smoking is permitted in the gaming area;

c.     failing to physically separate certain parts of the gaming area and designating them as smoke-free;

d.     failing to allow dealers to have fans on their tables;

e.     failing to allow dealers to place nonsmoking signs on their tables;

f.     failing to provide protective safety gear to dealers and other casino employees;

g.     failing to install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

h.     failing to monitor the health and welfare of its employees who are exposed to second-hand smoke, and failing to take steps to assist those adversely affected by second-hand smoke; and

i.     failing to take any other necessary steps to mitigate the dangers posed by second-hand smoke.

49.     As an actual and proximate result of Defendant's conduct, Plaintiff, and other members of the class have suffered, and continue to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.     Enter an order requiring the Defendant to take reasonable measures to protect its employees from second-hand smoke;

b.     Enter an order awarding Plaintiff and the class costs and reasonable attorney's fees associated with the prosecution of this action;

c.     Award any and all further relief provided by law that this Court deems equitable

and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  October 20, 2009

By:___/s/ Marc Cook_____
        Marc Cook

Jay Edelson[*]
Rafey Balabanian[*]
Steven Lezell[*]
KAMBEREDELSON, LLC
350 N. LaSalle Ave
Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
* Pro hac vice admittance to be sought

George Kelesis
Marc Cook
Bailus Cook & Kelesis
400 S. 4th St.
Suite 300
Las Vegas, NV 89101
Tel: (702) 385-3788
Fax: (702) 737-7712