**0056**
James J. Pisanelli, Esq., Bar No. 4027
jpisanelli@bhfs.com
Debra L. Spinelli, Esq., Bar No. 9695
dspinelli@bhfs.com
Jarrod L. Rickard, Esq., Bar No. 10203
jrickard@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:  (702) 382-2101
Facsimile:   (702) 382-8135

Attorneys for Defendants Wynn Las Vegas, LLC
dba Wynn Las Vegas and Wynn Resorts, Ltd.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KANIE KASTROLL, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WYNN RESORTS, LTD., a Nevada corporation d/b/a WYNN LAS VEGAS,<br><br>Defendant. | CASE NO. 2:09-cv-02034-LDG-LRL<br><br>**DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO STRIKE** |

Defendant Wynn Las Vegas, LLC dba Wynn Las Vegas, erroneously named in this action as Wynn Resorts, Ltd. (hereinafter "Wynn" or "Wynn Las Vegas"),[1] hereby moves to dismiss the action filed against it by Plaintiff Kanie Kastroll ("Plaintiff") on her own behalf, as well as on behalf of all past, present, and future non-smoking employees at Wynn Las Vegas.   Plaintiff alleges that Wynn has failed and is failing to provide a safe, smoke-free workplace for non-smoking employees at Wynn Las Vegas. The multiple deficiencies in Plaintiff's Complaint warrant dismissal on several grounds.

---

[1]   To the extent Plaintiff intentionally named Wynn Resorts, Ltd., this Motion is filed on its behalf as well.

First, this Court lacks subject matter jurisdiction over this action.  While Plaintiff alleges that the Class Action Fairness Act ("CAFA") grants this Court jurisdiction to hear and decide the claims she is bringing on behalf of all non-smoking Wynn Las Vegas employees, the very same Act mandates dismissal of this action.  No past and no future non-smoking Wynn employee has standing to bring claims for injunctive relief against Wynn.  Plaintiff cannot gain this Court's jurisdiction of her personal and individual complaints "through the back door" by a few conclusory class action allegations.  With the singular named plaintiff and current, non-smoking Wynn Las Vegas employees being the only individuals with standing to assert a legally cognizable claim, the claim is most certainly of local, home state concern.  As such, CAFA expressly mandates that the district court decline to exercise jurisdiction over this indisputable "home state controversy".

Second, Plaintiff has not alleged, nor can she, valid claims for relief.  Under the clear weight of the law, which includes the Nevada Legislature's specific endorsement of Wynn's conduct, Wynn has no duty to shield its employees from secondhand smoke and Plaintiff's claims must therefore fail.

Further, even if the Court looks past both of these deficiencies, Plaintiff's class allegations must still be stricken from her Complaint.  Under the law, litigants have no right to proceed with class discovery and certification if the allegations in their initial pleading fail to establish any good faith basis for a class.  Here, Plaintiff proposes a class replete with individual issues that are inappropriate for class action adjudication.  Therefore, and in order to save valuable time and judicial resources, Plaintiff's class action allegations should be stricken now.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

1

2

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f), is based on 28 U.S.C. § 1332(d), and is supported by the attached Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument this Court may choose to consider.

DATED this 11th day of December, 2009.

BROWNSTEIN HYATT FARBER SCHRECK

By:     /s/ James J. Pisanelli
       James J. Pisanelli, Esq., Bar No. 4027
       Debra L. Spinelli, Esq., Bar No. 9695
       Jarrod L. Rickard, Esq., Bar No. 10203
       100 City Parkway, Suite 1600
       Las Vegas, Nevada 89106-4614

Attorneys for Defendants Wynn Las Vegas, LLC dba Wynn Las Vegas and Wynn Resorts, Ltd.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

This case is not what it appears to be.  Contrary to its formal labels, legal phrases and smattering of clichés, conclusions and colloquialisms, this action has nothing whatsoever to do with smoking.  This action is designed to address neither the health and safety nor the harm suffered by even a single person.  In fact, even a summary review of the allegations contained in Plaintiff's Complaint reveals that there was never a realistic expectation this case would survive in this Court beyond its initial pleading.  At its heart, this case involves a single Nevada plaintiff (cloaked in the disguise of a class action) against a single Nevada defendant, with no actual harm to anyone and no federal question posed.  In other words, there is clearly and obviously no subject matter jurisdiction for this Court and Plaintiff was most certainly aware of that fact when she filed her Complaint.

The real basis for this action appears by all measures to be the pursuit of a political agenda.  Although not specifically disclosed in her pleading, Plaintiff is the president of a local union who has fought for years to unionize a certain group of Wynn's casino workers.  In what appears to be either a retaliatory lashing out at the Wynn or an otherwise shameless grab for publicity, Plaintiff has filed this action with no real causes of action under Nevada law, and no jurisdiction whatsoever for this Court.  Unfortunately, Plaintiff's abuse of the process, including this Court's time, will have to be addressed at another time and in another motion.  For now, Wynn will limit the focus of the present Motion to the many, and there are many, legal deficiencies in Plaintiff's Complaint.

**II.    STATEMENT OF FACTS**

Failing to grasp the obvious historical connection between the two, Plaintiff begins her Complaint by smearing the reputation of Wynn and simultaneously extolling the virtues of the Bellagio's "high-tech air filtration system" which she alleges is "designed to minimize the amount of second-hand smoke on its casino floor."  (Compl. ¶ 2, Doc. 1.)  Ignoring Wynn Las Vegas' own extensive state-of-the-art systems, Plaintiff frivolously accuses Wynn of "gambl[ing] with its employees' health and welfare in order to cut costs and maintain the status quo."  (*Id.*)  According

to Plaintiff, "[w]hile casino patrons are playing table games such as blackjack and roulette, employees working on the casino floor at Wynn Las Vegas play a different game called 'dodge the smoke.'"  (*Id.* ¶ 3.)

According to Plaintiff, the employees in harm's way include casino dealers, table games supervisors, slot floorpersons, cocktail servers, security officers, and managers.  (*Id.* ¶ 14.) (These are, not so coincidentally, the precise employees she seeks to represent through her union.) After reciting the familiar list of Surgeon General Warnings, Plaintiff contends that she is one of the employees forced to choose between "quit[ting] their jobs or continu[ing] to expose themselves and their unborn children to second-hand smoke."  (*Id.* ¶ 23.)  Plaintiff's Complaint reads more like a union rally speech than a legal pleading.  Whether her baseless and inflammatory allegations are really designed to simply garner support and appreciation from the people Plaintiff hopes to represent in her union is an obvious and fair question.

Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(b)(2) of a class consisting of "[a]ll former, current, and future nonsmoking employees of Wynn Las Vegas who were, are, or in the future will be exposed to unsafe levels of second-hand smoke."  (*Id.* ¶ 33.)  Plaintiff asks for injunctive relief only, and asserts claims for common law "failure to provide a safe workplace" and "breach of statutory duty to provide a safe workplace" pursuant to N.R.S. § 618.375. Specifically, Plaintiff alleges that Wynn breached its common law and statutory duties by failing to:

      (a)    designate certain sections of the gaming area as smoke-free;

      (b)    restrict the times in which smoking is permitted in the gaming area;

      (c)    physically separate certain parts of the gaming area and designate them as smoke-free;

      (d)    allow dealers to have fans on their tables;

      (e)    allow dealers to place nonsmoking sings on their tables;

      (f)    install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

(g)     monitor the health and welfare of its employees who are exposed to second-hand smoke and take steps to assist those adversely affected by second-hand smoke; and

(h)     take other necessary steps to mitigate the dangers posed by second-hand smoke.

(*Id.* ¶¶ 42, 48.)   In essence, Plaintiff asks this Court to override the Nevada Legislature's judgment on these very issues and judicially legislate how the gaming industry conducts its business.

     As demonstrated more thoroughly below, this Court lacks subject matter jurisdiction over Plaintiff's claims.   Plaintiff alleges that this Court's jurisdiction stems from the Class Action Fairness Act ("CAFA").   But, the home state controversy exception to CAFA jurisdiction applies and dictates that this Court "shall decline to exercise jurisdiction" on a purely local case or controversy between Nevada residents.   28 U.S.C. § 1332(d)(4)(A).   Even if the Court looks past this obvious defect, Plaintiff has not, and cannot, allege valid claims for relief.   Under the clear weight of the law, which includes the Nevada Legislature's specific authorization of Wynn's conduct, Wynn has no duty as alleged in Plaintiff's Complaint.   Her claims, therefore, fail on their face.

## III.   ANALYSIS

### A.   The Class Action Fairness Act Requires This Court To Decline Jurisdiction Over This Local Controversy.

#### 1.   *Rule 12(b)(1) requires the prompt dismissal of any action where this Court lacks subject matter jurisdiction.*

     It is more than well-established that subject matter jurisdiction is required before a federal court can preside over an action.   *See* Fed. R. Civ. P. 12(b)(1); *Mallard Auto. Group, Ltd. v. United States*, 343 F. Supp. 2d 949, 952-53 (D. Nev. 2004) (stating subject matter jurisdiction is a "threshold" issue that may be raised at any time by any party); *see also Tosco Corp. v. Cmty's for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).   "Subject matter jurisdiction must exist as of the time the action is commenced."   *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988).   A Rule 12(b)(1) motion attacking jurisdiction can be either facial, confining the inquiry to the allegations in the complaint, or

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (citation omitted).  But, when "it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court <u>shall</u> dismiss the action."  Fed. R. Civ. P. 12(h)(3) (emphasis added.)

Plaintiff alleges that the Class Action Fairness Act and its relaxed requirements grant this court subject matter jurisdiction to hear the claims of all "former, current, and future" non-smoking Wynn employees.  (Compl. ¶¶ 10, 33.)  However, as discussed in more detail below, former employees do not have standing to seek injunctive relief (the only relief Plaintiff seeks), and future employees have no injury in fact and, thus, also have no standing.   So, even if Plaintiff's Complaint conclusorily alleges all of the legal requisites for jurisdiction under CAFA, CAFA's home state controversy exception mandates dismissal of this dispute.

> ### 2.    *CAFA relaxes certain jurisdictional requisites but adds exceptions to the exercise of that jurisdiction.*

It is a well-known rule that a federal court has subject matter jurisdiction over an action that either arises under federal law, or presents complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331, 1332(a) (West 1998).  Diversity jurisdiction over class actions expanded with the passage of the Class Action Fairness Act of 2005, Pub.L. 109-2, 119 Stat. 4 (2005).  As amended by CAFA, district courts have "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs", the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d); *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007).   To determine whether the amount in controversy exceeds $5,000,000, individual class members' claims are aggregated.  28 U.S.C.A. § 1332(d)(6); *see also Abrego*, 443 F.3d at 684.[2]

---

[2]    Wynn disputes that the injunctive relief Plaintiff seeks comes anywhere close to meeting the amount in controversy minimum threshold of $5,000,000.  The proponent of federal court jurisdiction bears the burden of establishing that this standard is met.  *See Abrego Abrego v. The*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

This all said, whether a federal court exercises jurisdiction pursuant to CAFA is dictated by four additional rules, three of which are <u>exceptions</u> to federal jurisdiction, and two of which require a federal court to decline jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022-23 (9th Cir. 2007). The four rules are as follows:

(1) A federal court <u>must</u> exercise jurisdiction if there are 100 or more members of the putative class, and one-third or fewer of those class members are citizens of the forum state (in other words, two-thirds or more are citizens of non-forum state). 28 U.S.C. § 1332(d)(2).

(2) A federal court <u>may</u> exercise jurisdiction if more than one-third, but less than two-thirds of the putative class members are citizens of the forum state, *and* the "primary" defendants are also citizens of the forum state. 28 U.S.C. § 1332(d)(3). This is referred to as the "interests of justice exception" to CAFA jurisdiction.

(3) A federal court "<u>shall decline to exercise jurisdiction</u>" if more than two-thirds of the putative class members are citizens of the forum state, *and* all of the primary defendants are citizens of the forum state. 28 U.S.C. § 1332(d)(4)(A) (emphasis added). This is referred to as the "home state controversy exception" to CAFA jurisdiction. *See Serrano*, 478 F.3d at 1019.

(4) And, finally, a federal court "<u>shall decline to exercise jurisdiction</u>" if more than two-thirds of the putative class members are citizens of the forum state *and* at least one primary

---

*Dow Chem Co.*, 443 F.3d 676, 684 (9th Cir. 2006). This Court must first consider whether it is "facially apparent" from Plaintiff's Complaint that the jurisdictional amount is actually in controversy. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If it is not facially apparent, this Court may consider facts and evidence relevant to the amount in controversy issue. *Id.*

Here, one need look no further than the Complaint to see that the threshold minimum cannot be met. Putting aside Plaintiff's one conclusory allegation that the $5,000,000 is met, the actual facts alleged and relief sought demonstrate otherwise. If Plaintiff is granted all the relief she seeks, this Court would, in theory, order: (1) the designation and/or separation of the gaming area into smoking and non-smoking areas (i.e., like the roped off sections of the Venetian hotel and casino), (2) the creation of certain times when smoking on the casino floor is prohibited, (3) the issuance of fans and non-smoking signs for each gaming tables, and (4) the Wynn to update its new, state-of-the art air filtration system to be equal to the system in the older, Bellagio hotel and casino. (*See* Compl. ¶¶ 26, 42, 48.) Realistically, the cost to implement any and all of these requests is not anywhere close to $5,000,000. This is particularly so considering that the Bellagio is nearly a decade older than Wynn and that it is Wynn that has the state-of-the-art system. In other words, the cost to implement Plaintiff's remedial measures (separate and apart from the potential catastrophic loss in business) appears minimal.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

defendant is a citizen of the forum state *and* (i) that primary defendant's conduct forms the significant basis of the claims, (ii) the principal alleged injuries occurred in the forum state; and (iii) no similar class action has been filed against any of the defendants in the prior three years. 28 U.S.C. § 1332(d)(4)(B) (emphasis added).   This is referred to as the "local controversy exception" to CAFA jurisdiction.  *See Serrano*, 478 F.3d at 1019.

### 3.    *The Home State Controversy Exception Applies Here.*

With regard to Plaintiff's purported class action, whereby she seeks only injunctive relief, the home state controversy exception applies.[3]   Plaintiff is a resident of the State of Nevada. (Compl. ¶ 8.)  And, Wynn is a Nevada corporation with its principal place of business in Nevada. (*Id.* ¶ 9.)   Although Plaintiff purports to represent a class of "former, current, and future non-smoking" Wynn Las Vegas employees, (*id.* ¶ 33), only current non-smoking Wynn Las Vegas employees have Article III standing.   Thus, as a matter of law, only current non-smoking Wynn employees can be included in Plaintiff's purported class action.  In light of the above, and as discussed in more detail below, the home state controversy exception requires this Court to decline to exercise jurisdiction over this action and dismiss this case.

#### i.    *Future Wynn employees do not have Article III standing to be before this Court.*

That Plaintiff includes future employees in the definition of a class does not serve to circumvent the case and controversy requirement of Article III.  As this Court is aware, the first element of any claim is that the plaintiff have standing to bring the claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]."); *see also Mgmt. Ass'n for Private Photogrammetric Surveyors v. United States*, 467 F. Supp. 2d 596, 600 (E.D. Va. 2006) ("Standing, of course, is jurisdictional; its existence is a prerequisite to finding that a court has the power to adjudicate the cause.").  To establish standing, a plaintiff must show, among other

---

[3]    The facts supporting the application of the home state controversy apply equally to the local controversy exception.  Thus, the Court may decline jurisdiction under either exception.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

things, that he or she suffered an injury in fact. *See Lujan*, 504 U.S. at 561 (defining "injury in fact" as "an invasion of a legally protected interest which is concrete and particularized"); *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974).

Article III standing requirements do not change when one files suit on behalf of a purported class of persons. "Congress did not expand the jurisdiction of the federal courts by adopting Rule 23 of the Federal Rules of Civil Procedure."[4] *Strong v. Arkansas Blue Cross & Blue Shield Inc.*, 87 F.R.D. 496, 508 (D.C. Ark. 1980). All members of a purported class – whether they are named or unnamed – must have standing to bring the alleged claims on his or her own. *See Sanders v. Apple Inc.*, --- F.R.D. ----, 2009 WL 150950, at *10 (N.D. Cal. 2009) (stating that all class members must possess Article III standing) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d. Cir. 2006). "The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right." *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.C.S.D. 1982). Thus, all members of a purported class, named or unnamed, must have justiciable claims for the court to resolve.

Here, future Wynn employees do not have an injury-in-fact. Future employees, "by definition, . . . does not exist in any but the most abstract sense." *Moore v. W. Penn. Water Co.*, 73 F.R.D. 450, 453 (D.C. Pa. 1977) (defining future employees as "an amorphous, phantom group, incapable of identification in terms of both individuals and numbers") (internal quotation omitted). Because "future employees" "do not [yet] exist, they are incapable of being 'injured in fact'". *Strong*, 87 F.R.D. at 508. A litigant without an injury-in-fact lacks standing to seek relief from this Court. *Id.*; *Moore*, 73 F.R.D. at 450 ("[B]oth logic and policy dictate that the purported class cannot be defined to include future employees."); *Lamb v. Hamblin*, 57 F.R.D. 58,

---

[4]   This analysis regarding injury-in-fact and a lack of standing is not, in anyway, affected by the passage of the Class Action Fairness Act. The expanded federal jurisdiction for class actions brought under 28 U.S.C. § 1332(d) concern "minimal diversity" and aggregation of claims for purposes of calculating the $5,000,0000 jurisdictional minimum under this statute. Nothing in CAFA eliminates the injury-in-fact Article III standing requirement.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

60 (D. Minn. 1972) (holding that purported class members who "will be" affected in the future are "unidentifiable and lack standing to bring suit in their own right").

Moreover, a "threatened" injury is insufficient to satisfy Article III's "case or controversy" requirement. *See Minority Police Officers Ass'n of South Bend v. City of South Bend*, 555 F. Supp. 921, 924-25 (D.C. Ind. 1983) (holding that claims of future employees could not be litigated); *Mathews v. Diaz*, 426 U.S. 67, 71 (1976) (holding that the district court lacked jurisdiction over the claims of the purported class members who "will be" injured). Of course, any claims the "future" employees may acquire are prospective. In other words, the possible claims are not yet ripe for consideration by this Court. *Strong*, 87 F.R.D. at 508.

Finally, allowing a proposed class to include "future" employees is "unnecessary and inadvisable". *Selzer v. Bd. of Ed.. of City of New York*, 112 F.R.D. 176, 182 (S.D.N.Y. 1986) (proposed class included "all women who may in the future become qualified to apply for high school administrative or supervisory positions"). Where a named plaintiff, current employee seeks injunctive relief, any injunctive relief granted "will redound to the benefit of these persons in any event". *Id.* Thus, inclusion of future employees "is not necessary to protect whatever rights they may possess." *Id.*

### ii. Past Wynn employees do not have Article III standing to seek the injunctive relief sought in this case.

Plaintiff cannot remedy this Court's lack of subject matter jurisdiction by asserting that she represents claims of former non-smoking employees either. Former employees do not have standing to seek injunctive relief against the Wynn. *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1189 (9th Cir. 2007); *see also Milligan v. Am. Airlines, Inc.* 327 Fed. Appx. 694, 696, (9th Cir. 2009) (affirming summary judgment against former employee plaintiff seeking injunctive relief against former employer). One element of Article III standing is that a favorable decision by the court would provide redress to the individual plaintiff. *Lujan*, 504 U.S. at 560. Former employees seeking injunctive relief against their former employer "would not stand to benefit" from any prospective relief. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033 (9th Cir. 2006) (recognizing that former employees lack standing to seek injunctive relief because they "would

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

not stand to benefit from an injunction requiring the anti-discriminatory policies [to cease] at [their] former place of work").  Additionally, in cases where a plaintiff seeks injunctive relief, there must be a "real or immediate threat of an irreparable injury" to that plaintiff.  *Clark v. City of Lakewood,* 259 F.3d 996, 1007 (9th Cir. 2001); *see also Am. Civil Liberties Union of Nev. v. Lomax,* 471 F.3d 1010, 1015 (9th Cir. 2006) ("When evaluating whether [the standing] elements are present, we must look at the facts 'as they exist at the time the complaint was filed.'").

Here, while their inclusion may "beef up" Plaintiff's Complaint, former Wynn employees do not, as a matter of law, have standing to seek injunctive relief of the nature sought in this case. They are former employees.  There is no "real or immediate threat of irreparable injury" to these former employees stemming from the current workplace conditions (even assuming they are unsafe, which they are not).  And, even if this court were to grant the injunctive relief Plaintiff seeks, such relief would provide no redress or benefit to former Wynn employees.  Thus, Plaintiff cannot, as a matter of law, bring claims on their behalf.  *See, e.g., Lewis v. Casey,* 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing.").

### iii. The home state controversy exception mandates dismissal of Nevada residents' claims against a Nevada corporation.

In light of the elimination of former and future Wynn Las Vegas employees from the putative class, the analysis to determine whether the home state controversy exception to CAFA jurisdiction applies requires the examination of the residency of Plaintiff, Wynn Las Vegas, and current, non-smoking Wynn Las Vegas employees only.  Because § 1332 (d)(4)(A) (the home state controversy exception) is an "exception" to jurisdiction, if both prongs are met, this Court "shall decline to exercise jurisdiction." *See Serrano,* 478 F.3d at 1023 (stating that the CAFA provision is an exception to jurisdiction and "not part of the prima facie case for establishing minimal diversity under CAFA"); *accord Hart v. FedEx Ground Package Sys. Inc.,* 457 F.3d 675, 681 (7th Cir. 2006) (holding § 1332(d)(4)(A) and (B) are "express exceptions" to § 1332(d)(2)'s grant of jurisdiction).  To recap, the two prongs are (1) the primary defendant is a resident of the forum state; *and* (2) more than two-thirds of the putative class members are citizens of the forum state.  28 U.S.C. § 1332(d)(4)(A).

Both prongs of the home state controversy exception to subject matter jurisdiction are met here.   Wynn is the one and only defendant and Wynn is a Nevada corporation with its principal place of business in Nevada.   (Compl. ¶ 9.)   Wynn is unquestionably a Nevada resident for purposes of any jurisdictional diversity analysis.   Plaintiff, too, is a Nevada resident.   (*Id*. ¶ 8.) Thus, the true focus of the jurisdictional analysis is on the putative class members with standing. Or, in other words, the residency of the current, non-smoking employees of  Wynn Las Vegas is the sole issue before this Court.

To physically work at the Wynn Las Vegas and experience the working conditions that are the only basis of Plaintiff's claims, one must live in relative proximity to the Las Vegas hotel and casino.   As set forth in the Declaration of Kevin Tourek, attached hereto as Exhibit A, the residency of current Wynn Las Vegas employees falls just shy of unanimity (*i.e.*, 99.56%). (Ex. A ¶ 3.)   Out of 12,264 total employees, 12,210 are Nevada residents and 54 are residents of another state besides Nevada.   (*Id*. ¶ 4.)   To say that Wynn has satisfied the home state controversy exception is a gross understatement.   As such, jurisdiction must be declined.   Because Plaintiff has not alleged subject matter jurisdiction through standard diversity or federal question, this Court lacks subject matter jurisdiction and this case must be dismissed.

**B.**   **Plaintiff's Claims Fail As A Matter Of Law Because Wynn Has No Duty To Protect Its Employees From Secondhand Smoke.**

*1.*   *The Legal Standard for a 12(b)(6) Motion.*

Even if the Court looks past its own lack of subject matter jurisdiction, Plaintiff's claims are still invalid on their face and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).   For a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations in the Complaint as true and construe the pleadings in the light most favorable to the nonmoving party.   *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030, 31 (9th Cir. 2008).   It is not proper, however, to assume that a plaintiff "can prove facts which [he or she] has not alleged*." Associated Gen'l Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 527 (1983).   Additionally, courts do not "necessarily assume the truth of legal conclusions merely

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

because they are cast in the form of factual allegations in [the] Complaint." *McMillan v. Dep't of Interior*, 907 F. Supp. 322, 327 (D. Nev. 1995).

Additionally, the Court need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *Foster Poultry Farms, Inc. v. Suntrust Bank*, 355 F. Supp. 2d 1145, 1148 (E.D. Cal. 2004); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'").  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" asserted in the complaint. *Hydrick v. Hunter,* 500 F.3d 978, 985 (9th Cir. 2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

Here, both of Plaintiff's claims center upon her legal conclusion that Wynn has a duty to "minimize the level of second-hand smoke exposure its employees face in the casino." (Compl., ¶ 3.)  Plaintiff is wrong.  Neither the common law nor N.R.S. § 618.375 imposes any duty upon employers like Wynn to eliminate secondhand smoke from the workplace.  This fact is made clear by both case law and direct legislation enacted by the Nevada Legislature which specifically endorses Wynn's policy of permitting its customers to smoke.  In light of this, Plaintiff's claims must be dismissed.

### 2.     *As a matter of law, Wynn's does not owe the alleged duty to plaintiff.*

In order to allege a valid claim for negligence, a Plaintiff must show that:  (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of plaintiff's injuries; and (4) plaintiff suffered damages.  *See Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 921 P.2d 928 (1996).   "[I]n a negligence action, the question of whether a 'duty' to act exists is a question of law solely to be determined by the court." *Lee v. GNLV Corp.*, 117 Nev. 291, 296, 22 P.3d 209, 212 (2001) (citing *Scialabba*, 112 Nev. at 968, 921 P.2d at 930); *see also Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1177 (Nev. 2008) ("We have clearly and consistently stated since at least 2001 that whether a duty exists is actually a question of law to be determined solely by the courts.").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

1   Although the common law may impose a duty on employers to provide a safe workplace,

2   this duty does <u>not</u> extend to any requirement that employers protect their employees from

3   secondhand smoke.  *See Gordon v. Raven Sys. Research, Inc.*, 462 A.2d 10, 14 (D.C. 1983)

4   (holding that an employer's common law duty to maintain a safe workplace does not extend to the

5   dangers of cigarette smoke).  Indeed, neither the common law nor N.R.S. § 618.375 supports

6   Plaintiff's conclusion that employers have a duty to "mitigate the dangers posed by second hand

7   smoke."  In fact, Chapter 618 of N.R.S., Nevada's Occupational Safety and Health Act, cannot be

8   used to form the basis for <u>any</u> civil remedy – much less one that flies in the face of common law.

9   *See Firth v. Harrah South Shore Corp.*, 92 Nev. 447, 451, 552 P.2d 337, 340 (1976), (recognizing

10  that the Nevada "legislature did not intend to create any private civil remedy through the

11  Occupational Safety and Health Act.").  As stated by the Nevada Supreme Court, "nothing can be

12  found in the language of that act suggesting a civil action by an employee injured by reason of an

13  unsafe place of employment."  *Id.* at 450, 552 P.2d at 339-40.  Rather, "[e]nforcement of

14  NRS Chapter 618 is accomplished by (1) notice in lieu of citation for de minimis violations,

15  (2) citation for abatement and (3) assessment of penalty."  *Id.*, 552 P.2d at 339.

16  In contrast to Plaintiff's conclusions, Nevada law specifically endorses Wynn's alleged

17  policies and practices toward secondhand smoke.  Nevada's Clean Indoor Air Act ("NCIAA") was

18  passed as a ballot measure in 2006 and later codified as N.R.S. § 202.2483.  While the NCIAA

19  generally prohibits smoking in schools and all other "indoor places of employment", it

20  specifically exempts "areas within casinos where loitering by minors is already prohibited by state

21  law" from this prohibition.  *See* N.R.S. § 202.2483(3)(a).  The NCIAA defines "casinos" as any

22  "entity that contains a building or large room devoted to gambling games or wagering on a variety

23  of events." N.R.S. § 202.2483(9)(a).  "A casino must possess a nonrestricted gaming license."  *Id.*

24  The Wynn Las Vegas falls within the scope of this definition and it is, therefore, permitted to

25  allow smoking within certain areas of its casino.

26  As the Court knows, casinos were permitted to allow smoking within their premises even

27  before the passage of the NCIAA.  However, the NCIAA represented the "most significant

28  change to state laws on smoking in public places" and was designed with the specific purpose of

protecting children and employees from secondhand smoke.   *See* Argument Advocating Passage of Question 5, on file with the Nevada Secretary of State at: http://sos.state.nv.us/elections/nvelection/2006Election.asp.   With this purpose in mind, Nevada's citizens and its Legislature still exempted casino employers like Wynn from the reach of the NCIAA.  In fact, proponents of the NCIAA went out of their way to ensure that smoking would "still be allowed in gaming areas." *Id.*  The Court cannot ignore the declared limits of this direct legislation and permit Plaintiff to undermine the NCIAA now.  *See Day v. City of Fontana*, 19 P.3d 1196, 1200-01 (Cal. 2001) ("[W]e now examine whether the statute's application in actions such as the instant one would undermine the initiative's declared purpose or otherwise lead to absurd results.").  Plaintiff seeks to convince the Court that it should judicially legislate from the bench and eliminate the express exceptions to the NCIAA.  However, Plaintiff's forum is with the Legislature and not with this Court.

Indeed, as recognized in *Gordon*, "courts have wisely noted that the issue of nonsmokers' rights is one better left to the legislature." 462 A.2d at 14 (citing *Fed. Employees for Nonsmokers' Rights v. United States*, 446 F. Supp. 181, 185 (D.D.C. 1978); *Gaspar v. La. Stadium & Exposition Dist.*, 418 F. Supp. 716, 722 (E.D. La. 1976)).  As observed by one court:

> [T]he judicial process . . . is peculiarly ill-suited to solving problems of environmental control.  Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes.  Furthermore, the inevitable trade-off between economic and ecological values presents a subject matter which is inherently political and which is far too serious to relegate to the ad hoc process of 'governmental lawsuit' . . . .

*Gordon*, 462 A.2d at 14 (quoting *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 536-37 (S.D. Tex. 1972)).  Because Plaintiff has not shown why this Court should ignore the language of the NCIAA, which specifically endorses Wynn's alleged policy and practice regarding secondhand smoke, Plaintiff's claims must be dismissed.

C.   **Plaintiff's Class Action Allegations Must Be Stricken Because Plaintiff's Own Complaint Demonstrates That The Requirements For Maintaining A Class Action Cannot Be Met.**

Finally, should the Court somehow find that Plaintiff has overcome the apparent lack of subject matter jurisdiction and the obvious legal invalidity of her claims, Plaintiff's class action allegations must still be stricken from her Complaint.   On its face, Plaintiff's pleading demonstrates that the requirements for a class action cannot be met.   Therefore, and in order to avoid the waste of judicial time and resources that will result if Plaintiff is permitted to move forward with discovery and attempted certification, Plaintiff's class allegations should be stricken now.

While the certification of a class action at times involves "considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'", a defendant may move to strike class action allegations prior to discovery if "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."   *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205, n.3 (D.N.J. 2003) (citing *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D. Ill. 1977) (granting motion to strike class action allegations on the basis of the complaint); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ("Sometimes the issues are plain enough from the pleadings . . . , and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); *Illinois v. Climatemp, Inc.*, No. 79 C 4898, 1981 WL 2033, at *2-5 (N.D. Ill. Feb. 20, 1981) (rejecting plaintiff's argument that it would be procedurally improper to entertain  defendant's motion to strike class action allegations in advance of a motion by plaintiff to certify class)).   For example, in *Miller v. Motorola*, the U.S. District Court for the Northern District of Illinois granted defendant employer's motion to strike the plaintiff employee's class action allegations from the complaint because plaintiff's proposed class was "overbroad" and she could not properly represent the proposed class.   *See* 76 F.R.D. at 518.

Importantly, "[t]he Court must conduct a 'rigorous analysis' before certifying a class." *Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 609 (W.D. Wash. 2001) (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)).   "The party seeking class certification

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

bears the burden of proof and must meet each of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Under Rule 23(a), "[t]he Court's threshold concern is whether the proposed class meets the . . . requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Id.*  "Rule 23(b) requires that the proposed class demonstrate that either (1) prosecution of separate actions would risk creating incompatible standards of conduct for the defendant, (2) the action is for injunctive relief, or (3) common questions of law or fact predominate over individual questions and class action is a superior method of adjudication."  *Id.*

Here, Plaintiff seeks certification pursuant to Rule 23(b)(2) of a class consisting of "[a]ll former, current, and future nonsmoking employees of Wynn Las Vegas who were, are, or in the future will be exposed to unsafe levels of second-hand smoke."  (Compl. ¶ 33.)  As support for her request, Plaintiff alleges "[o]n information and belief," that there are "over one thousand members of the Class."  (*Id.* ¶ 34.)  In addition, Plaintiff alleges that "[c]ommon questions of fact and law exist as to all the members of the Class", "Plaintiff's claims are typical of the claims of other members of the Class", and "Plaintiff will fairly and adequately represent and protect the interests of the Class members."  (*Id.* ¶¶ 35-37.)  Plaintiff is wrong.

Indeed, Plaintiff overlooks the plain fact that this Court has already denied class action certification to an almost identical set of plaintiff employees.  Specifically, in *Badillo v. American Tobacco Company*, the U.S. District Court for the District of Nevada, denied class certification in three consolidated actions consisting of current or former casino workers that had been exposed to second hand cigarette smoke while at work and who sought to bring claims against tobacco companies.  202 F.R.D. 261 (2001).  In *Badillo*, the proposed classes included:

> (1)     All never smokers who are Nevada residents who are former full-time Nevada casino workers, and who worked in Nevada gaming areas over five years . . . .;
>
> (2)     All never smokers who are Nevada residents, who are full-time casino workers, other than table game dealers, and who have worked in Nevada gaming areas for over five years . . . .;

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

(3)     All never smokers who are Nevada residents, who are presently Nevada table game dealers and have been full time table game dealers in Nevada casinos for at least the past five years . . . .;

(4)     All Nevada residents who are presently Nevada table game dealers and have been full time table game dealers in Nevada for at least the past five years and who have not smoked for at least ten years . . . .; and

(5)     [A]ll Casino employees that have worked or are presently working for a casino or gaming-related establishment or facility in which gaming of any type has been licensed by the Nevada State Gaming Commission ("casinos"), within the State of Nevada, and who did not regularly smoke cigarettes during or after the term of their employment, and have developed or in the future may develop disorders requiring medical treatment and/or medical expenses related to the inhalation of 'second hand' cigarette smoke.

*Id.* at 262-63.

Importantly, the Court denied class certification to <u>all</u> of these proposed classes. Specifically, the Court ruled that all of the consolidated Plaintiffs had <u>failed</u> to meet their burden under Rule 23(a) to demonstrate that:  (1) there were sufficient questions of law or fact common to the class; (2) that the claims or defenses of the representatives were typical of the claims or defenses of the class; or (3) that the representatives would have fairly and adequately protected the interests of the class.  *Id.* at 264-65; *see also Duncan*, 203 F.R.D. 601 (denying class certification to proposed class of all present and former Northwest flight attendants who worked on international flights when smoking was permitted).

In regard to the commonality requirement, the Court ruled that "no judicial economy would be achieved by class action treatment in these cases" because "the claims advanced by the representative Plaintiffs as well as those of the proposed members of the Plaintiff classes are replete with individual issues such as causation, comparative fault, assumption of risk, product identification, statute of limitations and damages . . . ."  *Id.* at 264.  "For example, to prove causation in this case, Plaintiffs will likely need to show that they were exposed to a level of secondhand smoke which increased their risk of disease."  *Id.*  However, "employees of Nevada casinos perform a variety of work tasks in a variety of locations within casinos . . . [and] it does not require an expert to conclude that the exposure to second hand tobacco smoke of an employee

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

who works in one area of a particular casino would be different from that of an employee who works in another area." *Id.* at 265.  As stated by the Court, "the permutations are endless and do not lend themselves easily to grouping under the rubric of a class action." *Id.*  Pointing to these obvious differences, the Court ruled that the plaintiffs failed to adequately demonstrate the typicality and adequacy of representation elements as well.  *Id.*

Here, Plaintiff's proposed class is even more disparate and unrelated than those proposed by the plaintiffs in *Badillo*.  As in *Badillo*, Plaintiff's proposed class of "[a]ll former, current, and future nonsmoking employees of Wynn Las Vegas" is replete with individual issues such as causation, comparative fault, assumption of the risk and damages.  For example, due its ubiquitous nature, the Court can never be certain about the source of any individual claimant's exposure to secondhand smoke.  Indeed,  Wynn cannot control its employees' exposure to tobacco smoke outside of the workplace.  It may be true that many of its employees are exposed to secondhand smoke on a regular basis while at home or other places they frequent.  This simple reality would make it impossible to determine whether an employee's alleged injuries were actually caused by the secondhand smoke they purportedly encounter at the Wynn Las Vegas. Moreover, and as recognized by *Badillo*, Wynn employees "perform a variety of work tasks in a variety of locations within casinos." *Id.*  The obvious natural differences in the levels of exposure experienced by Wynn's employees also create a multitude of individual issues inappropriate for class action adjudication.

While Plaintiff attempts to distinguish her claims by limiting the proposed class to Wynn employees who "were, are, or in the future will be exposed to unsafe levels of second-hand smoke", this vague and unformulated classification only serves to add further disparity among the litigants.  Indeed, Plaintiff has not, and cannot, allege any universal standard for determining "unsafe levels of second-hand smoke".  The level at which secondhand smoke becomes dangerous is, no doubt, the subject of much debate among members of the scientific community.  Therefore, this standard fails to further Plaintiff's claims.  Indeed, the inclusion of this empty standard only serves to illustrate further why class certification is not appropriate here.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
(702) 382-2101

1    Finally, and as discussed above, it is also clear that Plaintiff's proposed class is overbroad

2  because she seeks to represent all "future" employees of Wynn as well.  As the Court knows, such

3  "prospective" classes have been rejected by the Supreme Court.  *See Mathews*, 426 U.S. at 72-73.

4  Clearly, Plaintiff has bitten off more than she can chew.  Because Plaintiff unquestionably cannot

5  meet her burden of demonstrating sufficient commonalty, typicality, or adequacy of

6  representation under Rule 23(a), her class action allegations should be stricken from her pleading

7  so that the parties, and the Court, may avoid any unnecessary waste of time and resources.[5]

8  **IV.    CONCLUSION**

9    In light of the foregoing, the Wynn Las Vegas respectfully requests that this Court grant

10  its Motion and dismiss Plaintiff's Complaint because (a) it lacks subject matter jurisdiction over a

11  home state controversy pursuant to CAFA and/or (b) Plaintiff fails to state a viable negligence

12  claim against Wynn Las Vegas.  In the alternative, Wynn Las Vegas requests that this Court strike

13  each and every class action allegation from Plaintiff's Complaint pursuant to Rule 12(f).

14    DATED this 11th day of December, 2009.

15    BROWNSTEIN HYATT FARBER SCHRECK

17    By:    /s/ James J. Pisanelli
            James J. Pisanelli, Esq., Bar No. 4027
18          Debra L. Spinelli, Esq., Bar No. 9695
            Jarrod L. Rickard, Esq., Bar No. 10203
19          100 City Parkway, Suite 1600
            Las Vegas, Nevada 89106-4614

20
21    Attorneys for Defendants Wynn Las Vegas, LLC
      dba Wynn Las Vegas and Wynn Resorts, Ltd.

---

[5]   Should this Court deem it proper to strike Plaintiff's class action allegations, this Court will not have subject matter jurisdiction to hear Plaintiff's individual claims.   Plaintiff asserted jurisdiction under CAFA only.  There is no federal question raised by the issues in this case and, with Kastroll and Wynn being residents of the State of Nevada, there also is no diversity.  Thus, this action must be dismissed.  It bears mention, however, that Plaintiff would not be without a proper forum.