1  Jay Edelson (admitted pro hac vice)
   Steven Lezell (admitted pro hac vice)
2  EDELSON MCGUIRE, LLC
   350 N. LaSalle Ave
3  Suite 1300
   Chicago, Illinois 60654
4  Tel: (312) 589-6370
   Fax: (312) 589-6378
5
   George Kelesis
6  Marc Cook
   Bailus Cook & Kelesis, LTD
7  400 S. 4th St.,  Suite 300
   Las Vegas, NV 89101
8  Tel: (702) 385-3788
   Fax: (702) 737-7712
9
                    UNITED STATES DISTRICT COURT
10
                        DISTRICT OF NEVADA
11

12  KANIE KASTROLL, on her own behalf and       Case No. 2:09-cv-2034-LDG-LRL
    on behalf of all others similarly situated,
13
                  Plaintiff,                    **PLAINTIFF'S OPPOSITION TO
14                                              DEFENDANT'S MOTIONS TO DISMISS
            v.                                  AND TO STRIKE**
15
    WYNN RESORTS, LTD. a Nevada
16  corporation d/b/a WYNN LAS VEGAS,

17               Defendant.

18
            COMES NOW, Plaintiff Kanie Kastroll, by and through her counsel of record, Jay
19
    Edelson, Esq., and Steven Lezell, Esq., of the law firm of Edelson McGuire, LLC, and Marc P.
20
    Cook, Esq., of the law firm of Bailus Cook & Kelesis, Ltd., and hereby files her Opposition to
21
    Defendant's Motions to Dismiss and to Strike.  This Opposition is made and based on all papers
22

23

24

25

26

27

28

and pleadings on file herein, all exhibits, affidavits and oral argument of counsel.

Dated:  January 27, 2010

Respectfully submitted,

KANIE KASTROLL

By:____/s/ Marc Cook_____
              One of Plaintiff's Attorneys

George Kelesis
Marc Cook
Bailus Cook & Kelesis
400 S. 4th St.
Suite 300
Las Vegas, NV 89101
Tel: (702) 385-3788
Fax: (702) 737-7712

Jay Edelson (admitted *pro hac vice*)
Steven Lezell (admitted *pro hac vice*)
EDELSON MCGUIRE, LLC
350 N. LaSalle Ave
Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

**POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Unable to successfully attack the Complaint as written and filed by Plaintiff, Wynn redrafts the pleadings, redefines the class, and presents – without support – its own set of facts. Then, touting a new pleading of its own design, Wynn argues the "complaint" is so deficient that the Court must grant it summary judgment and enter an order denying class certification—all before an answer is filed or even a single shred of discovery is taken.

This Court should decline Wynn's invitation to abandon well-established procedure and precedent. As demonstrated below, this Court has subject matter jurisidiction to decide this case. Unnamed class members do not have to demonstrate standing, and courts in the Ninth Circuit have certified numerous classes of past and future employees. Furthermore, and irrespective of the legislature's decision to not prohibit cigarette smoking on casino gaming floors, Wynn still owes a duty to provide a safe workplace for its employees when it comes to the obvious dangers posed by second-hand smoke.

Finally, Wynn's Motion to Strike the class allegations from the "complaint" is grossly premature and unwarrented.

## I.    STATEMENT OF FACTS

Wynn employees face an unfortunate choice:  either quit their jobs or ingest, constantly, over fifty cancer-causing toxins and chemicals contained in second-hand smoke.  (Compl. ¶¶ 5, 23.)

As this Court is well aware, second-hand smoke is smoke from cigarettes and cigars that is released into the atmosphere when exhaled by smokers.  (Compl. ¶ 1.)  Second-hand smoke has been designated as a known human carcinogen (cancer-causing agent) by numerous national governmental and private agencies and associations.  (Compl. ¶ 1.)  The Surgeon General estimated that in the year 2005 alone exposure to second-hand smoke killed over 3,000 non-smokers due to lung cancer and approximately 46,000 non-smokers due to coronary heart disease.

1   (Compl. ¶ 5.)[1]  The Surgeon General has also found that exposure to second-hand smoke has

2   immediate adverse effects on the health and well-being of non-smokers.  (Compl. ¶¶ 6-7.)

3         While smoking is permitted in the gaming areas of the Nevada casinos, some casinos have

4   recognized the devastating effect of second-hand smoke on their employees and have voluntarily

5   taken steps to minimize these effects.  (Compl. ¶ 2.)  Defendant Wynn, however, has done nothing

6   to protect the health and welfare of its employees who are forced to inhale second-hand smoke

7   eight hours a day during their shifts on the gaming floor.  (Compl. ¶¶ 2-3, 17.)

8         Plaintiff Kastroll works at the gaming area at Wynn.  (Compl. ¶¶ 27, 28.)  This gaming

9   area consists of table games (e.g., blackjack, craps, roulette, and baccarat), as well as slot

10  machines and other gaming devices.  (Compl. ¶ 13.)  Numerous employees work in the gaming

11  area at Wynn, including casino dealers, table games supervisors, slot floorpersons, cocktail

12  servers, security officers, and managers.  (Compl. ¶ 14.)  The gaming area is open for business to

13  the public twenty-four hours a day, seven days a week.  (Compl. ¶ 15.)  Smoking is permitted in

14  the gaming area at WYNN twenty-four hours a day, seven days a week.  (Compl. ¶ 16.)

15        Employees who work in the gaming area generally work eight-hour shifts, during which

16  time they are continuously exposed to second-hand smoke.  (Compl. ¶ 17.)  Wynn's management

17  forbids dealers in the gaming area to designate certain tables as "smoke-free."  (Compl. ¶ 18.)

18  Employees are also forbidden to request that any customer blow smoke away from the table or ask

19  that customers move their ashtrays.  (Compl. ¶ 19.) Employees are instructed not to fan their

20  hands at tobacco smoke.  (Compl. ¶ 19.)

21        If a customer asks a dealer "do you mind if I smoke?" Wynn instructs its dealers to answer

22  "no, not at all," even if the tobacco smoke does in fact bother the dealer and causes him or her

23  adverse health effects.  (Compl. ¶ 20.)  Dealers who tell customers that second-hand smoke

24  bothers them will likely be subject to discipline.  (Compl. ¶ 20.)

25

---

26    [1]    Citing Department of Health and Human Services, The Health Consequences of
27  Involuntary Exposure to Tobacco Smoke, A Report of the Surgeon General, iii (2006), *available
     at* URL http://www.surgeongeneral.gov/library/secondhandsmoke/ ("Executive Summary PDF"
28  hyperlink) (last visited January 20, 2010).

Further, Wynn encourages its customers to smoke.  (Compl. ¶ 21.)  Cocktail servers bring complimentary cigars and cigarettes to customers at the gaming tables, as well as provide ashtrays and matchbooks with the Wynn Las Vegas logo emblazoned on the cover.  (Compl. ¶ 21.)

Wynn's employees are forbidden from complaining about the amount of second-hand smoke that they are forced to inhale and risk losing their jobs if they voice dissent.  (Compl. ¶ 22.) While Wynn will sometimes make accommodations for casino employees who are pregnant, these accommodations are rare and made only at the discretion of individual floor supervisors.  (Compl. ¶ 23.)

Exposure to second-hand smoke on the Wynn's casino floor causes its employees numerous deleterious health effects, including red, irritated, watery eyes, coughing, sore throat, sneezing, shortness of breath, dizziness, wheezing, tightness in the chest, asthma, headaches, nausea, excess mucus and phlegm, and ingestion of cancer-causing chemicals and toxins.  (Compl. ¶ 24.)  Working at Wynn, Plaintiff Kastroll has developed asthma and the constant exposure to second-hand smoke has exacerbated her condition.  (Compl. ¶ 32.)

Wynn is aware of the health risks posed by exposure to second-hand smoke, but nevertheless ignores this problem on its gaming floor.  (Compl. ¶¶ 25-26.)  Specifically, Wynn has failed to (1) designate certain sections of the gaming area as smoke-free; (2) restrict the times in which smoking is permitted in the gaming area; (3) physically separate certain parts of the gaming area and designate them as smoke-free; (4) allow dealers to have fans on their tables; (5) allow dealers to place nonsmoking signs on their tables; (6) install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air; (7) monitor the health and welfare of its employees who are exposed to second-hand smoke and take steps to assist those adversely affected by second-hand smoke; (8) and take other necessary steps to mitigate the dangers posed by second-hand smoke.  (Compl. ¶ 26.)

1    Unable to sustain the unbearable working conditions any longer, Plaintiff Kastroll brought

2  a class action complaint on behalf of "all former, current, and future nonsmoking employees of

3  Wynn Las Vegas who were, are, on in the future will be exposed to unsafe levels of second-hand

4  smoke." (Compl. ¶ 33.)  Wynn filed Motion to Dismiss and, in the alternative, Motion to Strike,

5  which are currently pending before this Court.

6  **III.    ARGUMENT**

7    Wynn makes three main arguments, none of which warrant dismissal.  First, Wynn

8  improperly re-writes Plaintiff's complaint so that it fits within the home state controversy

9  exception of the Class Action Fairness Act ("CAFA").  Second, Wynn incorrectly argues that it

10  has no duty to create a safe workplace for its employees when it comes to the effects of second-

11  hand smoke because smoking is not prohibited in Las Vegas casinos.  Lastly, in its Motion to

12  Strike, Wynn argues that the class action allegations should be stricken from the Complaint—a

13  drastic remedy available only in circumstances not present before this Court.

14    In the end, the Complaint, as written and filed by Plaintiff Kastroll, states a claim against

15  Wynn for its breach of the common law duty to provide employees with a safe work environment.

16  **A.    Wynn's Motion to Dismiss Should be Denied Because This Court Has
        Jurisdiction Under the Class Action Fairness Act and the Home State**
17  **Exception Does Not Apply.**

18    Plaintiff's claims satisfy CAFA because there are over 100 potential class members, over

19  $5,000,000 in controversy, and at least one class member is diverse from Defendant.  (Compl. ¶¶

20  10-12.); *see also* 28 U.S.C. § 1332 (d)(2)(A); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163

21  (11th Cir. 2006).  Wynn, however, re-writes Plaintiff's class definition to eliminate past and

22  future employees.  (Mot. at 9-12.)  With these employees out of the picture, Wynn argues that

23  CAFA's home state or local controversy exception applies because over two thirds of current

24  employees are purportedly citizens of Nevada.  (Mot. at 12-13.)

25

26

27

28

Wynn's argument fails for two reasons.  First, Wynn lacks the authority to re-write Plaintiff's Complaint and class definition.  Second, Wynn's basis for doing so – that past and future employees cannot be included in the class – mischaracterizes the standing requirements of absent class members and overlooks the fact that courts regularly certify classes that include past and future workers.  Ultimately, none of Wynn's cited authorities permits the Court to apply the home state controversy exception here.

### 1. Wynn lacks the authority to re-write Plaintiff's Complaint.

Wynn lacks the authority to re-write the Complaint.  *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007) (stating that "it is well established that the plaintiff is 'master of her complaint' and can plead to avoid [or gain] federal jurisdiction"); *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996) (defendants cannot "rewrite a plaintiff's properly pleaded claim in order to remove it to federal court").  Because Plaintiff is the master of her Complaint, the class definition she has alleged prevails.  Accordingly, Wynn's arguments based on the application of CAFA's home state controversy exception should be discarded.  As the exception does not apply, Wynn's arguments attacking subject matter jurisdiction fail.

### 2. Even if Wynn could theoretically re-write the Complaint, Wynn's exclusion of past and future employees misconstrues standing requirements in class actions and ignores numerous cases certifying classes that include such employees.

Assuming for the moment that Wynn can re-define the putative class in a 12(b)(6) motion, Wynn's argument that past and future employees are not covered by the lawsuit confuses two distinct and independent issues:  a plaintiff's ability to assert claims on behalf of certain unnamed members of the proposed class and Article III justiciability and standing requirements.  In a class action, the proper focus of examination shifts "from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.'"  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (citing F. R. Civ. P. 23).  All that is required is that: (1) "a named plaintiff in a class action must show that the threat of injury in a case such as this is 'real and immediate,'" and (2) that the named plaintiff is "a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  *Id.*

In the instant case, Plaintiff Kastroll has alleged she is a current employee.  The threat to her from second hand smoke is clear and immediate.  Additionally, since the class consists of past, current and future employees, she is a member of the class she seeks to represent.

### a.    Unnamed class members need not prove standing.

Prior to the time a district court makes a determination as to class certification, "potential class members are mere passive beneficiaries of the action brought on their behalf." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974).  These passive beneficiaries "need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court."  1 NEWBERG ON CLASS ACTIONS § 2:7 (4th ed. 2009); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (referring to the application of Rule 23 requirements to class representatives as "statutory standing").  In fact, the issue whether a named plaintiff who has shown individual standing may represent the rights of absent members is resolved under Rule 23 governing class actions, and has nothing to do with the issue of standing. NEWBERG, *supra*, § 2:7.  In other words, the fact that the named plaintiff seeks to represent the rights of the absent class members "does not in any way create additional constitutional standing requirements."  *Id.*; *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998) (once the named plaintiff has established his individual standing, no additional standing requirement exists for the putative class members); *Hassine v. Jeffes*, 846 F.2d 169, 175 (3rd Cir. 1988) (noting the district court's erroneous use of the term "standing"); *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 522-24 (M.D. Ala. 1992) (rejecting an argument that a court should inquire whether members of the proposed class have standing).

As a corollary, any inquiry into standing is premature before the district court addresses the class certification issue.  *Ortiz*, 527 U.S. at 831 (holding that "the issue about Rule 23 certification should be treated first" since "the class certification issues are . . . *logically antecedent to Article III concerns*, and themselves pertain to statutory standing, which may properly be treated before Article III standing"); *see also Sosna*, 419 U.S. at 399  (stating that only after the court has

1  undertaken a Rule 23 analysis and has certified the class does the class become an entity

2  independent of the class representative).

3        In this case it is evident that Wynn's inquiry into the standing of unnamed class members

4  is premature since Plaintiff has not yet sought class certification—the issue is more appropriately

5  left to an analysis within the framework of Rule 23, rather than through the standard elements of

6  Article III standing.  At this time, only Plaintiff Kastroll must satisfy standing requirement of

7  Article III.  Since Wynn does not challenge Plaintiff Kastroll's standing (nor could it) the

8  constitutional requirements of Article III are satisfied in this case.  To the extent Wynn relies on

9  authorities that hold to the contrary, such reliance is seriously misplaced.

10             b.      **The Ninth Circuit and other courts nationwide have certified**
                       **proposed classes consisting of past and future employees.**

11        Not surprisingly, the Ninth Circuit and other courts have certified proposed Rule 23(b)(2)

12  classes consisting of a defendant's past and future employees as well as other past and future class

13  members.  *See e.g.*, *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 781 (9th Cir. 1986)

14  (affirming district court's certification of a class consisting of all male employees who were, are or

15  will be employed in positions entitling them to certain retirement benefits); *Mullen v. Treasure*

16  *Chest Casino*, 186 F.3d 620, 623, 629 (5th Cir. 1999) (affirming certification of a class brought by

17  former casino employees on behalf of all employees who have been stricken with respiratory

18  disease because of their exposure to second-hand smoke); *Paton v. N.M. Highlands Univ.*, 275

19  F.3d 1274, 1280 (10th Cir. 2002) (finding that decertifying a class consisting of all present and

20  future female student athletes was an abuse of district court's discretion); *Kilgo v. Bowman*

21  *Transp., Inc.*, 789 F.2d 859, 878 (11th Cit. 1986) (affirming certification of the class consisting of

22  terminated employees, as well as future and deterred job applicants); *Walters v. Thompson*, 615 F.

23  Supp. 330, 335 (N.D. Ill. 1985) (certifying a class consisting of present and future inmates of the

24  Illinois maximum security prisons); *Wilmington Firefighters Local 1590 v. City of Wilmington*,

25  109 F.R.D. 89, 94 (D. Del. 1985) (conditionally certifying the class consisting of certain present

26  and future uniformed employees of the fire department).

27

28

1    In *Probe*, the Ninth Circuit affirmed the district court's certification of a class, consisting

2  of all male employees "*who were. . . are or will be employed* in positions entitling them to

3  membership in STRS, and who are currently receiving, eligible to receive, or in the future will

4  receive or may be eligible to receive retirement benefits . . . ." 780 F.2d at 781 (emphasis added).

5  The court specifically held that "[t]he fact that the class includes future members does not"

6  preclude certification. *Id.* (citing 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

7  PRACTICE AND PROCEDURE § 1760 at 580-81 (1972)); *see also Walters v. Reno*, 145 F.3d 1032,

8  1047 (9th Cir. 1998) (stating that "[e]ven if some class members have not been injured by the

9  challenged practice, a class may nevertheless be appropriate").

10    Furthermore, in *Mullen*, the Fifth Circuit affirmed the district court's class certification in a

11  very similar case to the case at bar. 186 F.3d at 629. In that case, former riverboat casino

12  employees sued the casino for respiratory injuries allegedly caused by second-hand smoke due to

13  the casino's defective and/or improperly maintained ventilation system. *Id.* at 623. The Fifth

14  Circuit affirmed the class certification despite the fact that the named plaintiffs were former

15  employees of the riverboat casino and the class included former employees. *Id.* at 623-25, 629.

16    Finally, it is also well established that when a plaintiff seeks to certify only a declaratory or

17  injunctive relief class under Rule 23(b)(2), as Plaintiff does in this case, "a precise class definition

18  is less critical." *Bzdawka v. Milwaukee County*, 238 F.R.D. 469, 474, 476 (E.D. Wis., 2006)

19  (certifying a Rule 23(b)(2) class consisting of disabled county residents who are now or will in the

20  future be eligible to reside in a certain county assisted living units). Hence, since intense scrutiny

21  of the class definition will ultimately not be required at the time this Court decides class

22  certification—it certainly is not appropriate to conduct the inquiry now so as to dismiss the

23  Complaint at the pleadings stage. Accordingly, the weight of authority makes clear that past and

24  future employees are appropriate class members.

25

26

27

28

### 3.    Wynn's authorities are inapposite.

Wynn cites several cases in support of its erroneous position that the unnamed class members must have independent standing. (Mot. at 9-12.) These cases, however, represent "uncritical reliance . . . on standing-related concepts in attempts to articulate the limits of the Rule 23 qualifications." NEWBERG, *supra*, § 2:7. Most importantly, none of the cases Wynn cites support its position—all of Wynn's cases address the issue of a class definition for the purposes of class certification.[2] Not a single case relied on by Wynn deals with the re-writing of a plaintiff's complaint at the pleading stages, without any discovery, to avoid CAFA jurisdiction.

The cases are each further distinguishable in their own right. Though Wynn relies on *Mathews v. Diaz*, 426 U.S. 67, 71 (1976) for the proposition that the district court did not have jurisdiction over the claims of the proposed class members "who will be" injured, (Mot. at 11) in reality the Supreme Court in *Mathews* actually held that the district court lacked jurisdiction with respect to future members only because they – as immigrants applying for Medicare coverage – would first have to be subjected to administrative review. *Matthews*, 426 U.S. at 71. Since Wynn does not claim that Plaintiff or the class members should have exhausted any administrative remedies first, *Matthews* is inapplicable.

Similarly, the district court case of *Moore v. Western Pennsylvania Water Company* is of little help. 73 F.R.D. 450 (W.D. Pa. 1977). Its holding that future employees represent an amorphous group "too ill-defined" to certify is contradicted by *Probe*'s holding that "[t]the fact that the class includes future members does not render the class definition so vague as to preclude certification." *Probe*, 780 F.2d at 780. In any case, *Moore* is not the prevailing decision in the

---

[2]    Wynn also cites *Walsh v. Nev. Dep't of Human Resources*, which featured *an individual action brought by a single plaintiff*, for the proposition that a former employee lacks standing to bring injunctive relief claim against her employer. 471 F.3d 1033 (9th Cir. 2006). Reliance on *Walsh* again confuses the Article III standing requirements for a named plaintiff and Rule 23 class certification requirements for the unnamed members of the proposed class. *See* NEWBERG, *supra*, § 2:7. Wynn's reliance on *Milligan v. American Airlines, Inc.* is likewise misplaced. 2009 WL 1154213 (9th Cir. Apr. 30, 2009) (unpublished opinion). In that case, the court again dealt with standing of the named plaintiff who was a former employee of the defendant. *Id.* at *1. Plaintiff Kastroll – the named class representative in this case – is a current employee of Wynn, and thus has standing to bring a claim for injunctive relief.

1   Third Circuit. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 244 (3rd Cir. 1975) (affirming

2   certification of a class consisting of all past, present, and future employees of the defendant).

3   Wynn also cites opinions of the district courts in Arkansas and Minnesota that, on motions for

4   class certification, held that future members of the class did not have standing to be a part of the

5   certifiable class. *See Strong v. Ark. Blue Cross & Blue Shield*, 87 F.R.D. 496, 508 (E.D. Ark.

6   1980); *Lamb v. Hamblin*, 57 F.R.D. 58, 60 (D. Minn. 1972). *Strong* is inapplicable because the

7   court mistakenly analyzed the claims of the unnamed class members as a question of "justiciable

8   controversy," contrary to the well-established precedent of the Supreme Court. *See Sosna*, 419

9   U.S. at 403 (stating that focus in class actions shifts "from the elements of justiciability to the

10   ability of the named representative to fairly and adequately protect the interests of the class")

11   (internal quotations omitted). Also, the *Strong* court declined to certify the proposed class mainly

12   because the named plaintiffs "failed to meet their burden in showing that they could fairly and

13   adequately protect the interests of members of the class" due to potential conflicts of interest and a

14   lack of resources. 87 F.R.D. at 508-11. Furthermore, the Eight Circuit has affirmed other class

15   certification definitions consisting of all present and future detainees of a county jail. *See, e.g.,*

16   *Ahrens v. Thomas*, 570 F.2d 286, 288-89 (8th Cir. 1978).

17       *Lamb* is also distinguishable. In that case, the named plaintiffs lacked standing to pursue a

18   class action against the city's water department for improper termination of water service since

19   they had moved out of the subject properties. *Lamb*, 57 F.R.D. at 60. Determined to allow the

20   case to proceed, the district court inquired whether the unnamed class members were capable "to

21   bring suit in their own right." *Id.* While this inquiry may have been improper, the court in *Lamb*

22   nevertheless certified the class after excluding the future members. *Id.* at 60-61. Because the

23   issue of Plaintiff's standing is not in dispute in this case, there is little reason for this Court to

24   follow *Lamb* and to inquire whether the unnamed members of the class could bring the instance

25   action in their own right.

26

27

28

1    Finally, in violation of the bar on citing the case at all, Wynn cites to the Ninth Circuit's

2  Order in *Dukes v. Wal-Mart, Inc.* ("*Dukes II*"). The opinion in that case that has been explicitly

3  withdrawn due to the pendency of the rehearing *en banc*. 556 F.3d 919, 919 (9th Cir. 2009)

4  (stating that *Dukes v. Wal-Mart, Inc.* ("*Dukes I*"), 509 F.3d 1168 (9th Cir. 2007) "shall not be cited

5  as precedent by or to any court of the Ninth Circuit"). Accordingly, *Dukes I* has no precedential

6  authority and Wynn should not have cited to it.[3]

7    Hence, Wynn's citations are inapplicable to the instant controversy, and, for each case

8  Wynn cites, there is another case Wynn ignores.

9    **4.    Wynn has not produced evidence to show Plaintiff has failed to meet**
   **CAFA's $5 million amount in controversy requirement.**
10

11    Via footnote, Wynn also claims that the cost of the injunctive relief to Wynn will not

12  exceed CAFA's $5,000,000 threshold.[4] (Mot. at 7-8, n.2.) Wynn has failed to submit any

13  declaration or any other evidence to substantiate its claims. Since the allegations of the Complaint

14  must be taken as true, Wynn cannot simply assert facts to rebut those allegations without adequate

15  support. Upon information and belief, Wynn's air filtration system is insufficient to satisfy

16  Wynn's duty to provide its employees a safe work environment. Further, Plaintiff anticipates that

17  ───────────────────

18  [3]    Nevertheless, even if the Ninth Circuit subsequently affirms *Dukes I* on rehearing,
   that case is distinguishable. *See* 509 F.3d at 1189. First, the *Dukes I* court held that former
19  employees did not have standing to pursue injunctive relief after the district court had granted in
   part the plaintiffs' motion for class certification, which itself only occurred following extensive
20  discovery and briefing. *Id.* at 1174-75. Second, the nature of the injunctive relief is remarkably
   different. In *Dukes I*, the plaintiffs claimed that the defendant engaged in gender-based
21  employment discrimination. *Id.* at 1174. The plaintiffs did not claim that discrimination was the
   reason why "former employees" have terminated their employment. *Id.* at 1189. Former
22  employees in *Dukes I* may have not known about the alleged discrimination until after they had
   left Wal-Mart or until that lawsuit was filed.
23    In this case, on the other hand, discovery will show that Wynn's failure to provide a safe
   work environment was the reason many employees were forced to leave their jobs, unable to
24  tolerate the dangerous work conditions any longer. If Plaintiff prevails on the merits, these former
   employees would be willing to return to Wynn, and thus would also benefit from the injunctive
25  relief sought. *See Wetzel*, 508 F.2d at 253 (holding that former employees were properly included
   in the class definition since former employees who have left the company because of the
   underlying conditions may wish to return if those conditions are terminated).
26  [4]    Insofar as Wynn denies the existence of a common law duty to provide a safe work
   environment while asserting that its ventilation system adequately protects its employees, Plaintiff
27  should be granted leave to amend to add a claim for negligence consistent with the voluntary
   undertaking doctrine. *See Doggett v. United States*, 858 F.2d 555, 566 (9th Cir. 1988).
28

- 13 -

1  discovery will show that the cost of compliance to Wynn with the potential order for injunctive

2  relief will exceed $5,000,000.

3       In any case, where a dispute exists as to the amount in controversy or when additional facts

4  are needed to establish the jurisdictional amount, a court may allow a limited discovery on the

5  issue of the amount in controversy for the purposes of establishing jurisdiction. *Laub v. U.S.*

6  *Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (reversing the district court decision not to

7  allow discovery for the purposes of establishing federal subject matter jurisdiction); *see also*

8  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986) (stating that

9  "discovery should ordinarily be granted where pertinent facts bearing on the question of

10 jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.")

11 Therefore, to the extent Wynn's arguments are not rejected outright, Plaintiff should be allowed

12 limited discovery related to the factual issues Wynn raises in its Motion to Dismiss.

13       Wynn has failed to show that the home state exception to CAFA applies here.  Its cases

14 and arguments conflate Article III standing with the ability of the named Plaintiff to represent

15 absent class members.

16   **B.    Wynn's Common Law Duty to Provide its Employees With a Safe Work
         Environment Includes Protecting Employees From the Dangers of Second-**
17       **Hand Smoke.[5]**

18       The Nevada Supreme Court has long held that the employers have a common-law duty to

19 protect their employees from the harmful effects of noxious chemicals and fumes.  *Conway v.*

20 *Circus Circus Casinos, Inc.*, 8 P.3d 837, 839, 841 (Nev. 2000) (allowing employees to seek

21 injunctive relief for casino's failure to protect them from noxious fumes); *Pershing Quicksilver*

22 *Co. v. Theirs*, 152 P.2d 432, 440 (Nev. 1944) (holding that an employer has a common law duty to

23 protect its employees from poisonous gas and fumes by taking remedial measures).

24

25

26  _____

27    [5]    Plaintiff respectfully withdraws Count II alleging a private cause of action under the
    Nevada Occupational Safety Act.

28

- 14 -

1      While Nevada courts have not yet ruled on this very issue, other courts have recognized an

2   employer's duty to protect employees from the dangers of second-hand smoke. *See, e.g., Wilhelm*

3   *v. CSX Transp., Inc.*, 65 Fed.Appx. 973, 978 (6th Cir. 2003); *Shimp v. N.J. Bell Tel. Co.*, 368 A.2d

4   408, 413-14 (N.J. Super. 1976).

5      The court in *Shimp* specifically stated that the duty to provide a safe work environment

6   includes the duty to minimize the effects of the second-hand smoke from the workplace. *Id.* at

7   415-16.  Relying on this affirmative duty, the court granted injunction and ordered the employer to

8   restrict smoking to only a certain area. *Id.* at 416.  Several years later the Missouri Court of

9   Appeals held in *Smith v. Western Electric Company* that "by failing to exercise its control and

10  assume its responsibility to eliminate the hazardous condition caused by tobacco smoke, defendant

11  has breached and is breaching its duty to provide a reasonably safe workplace." 643 S.W.2d 10,

12  13 (Mo. App. 1982).  Subsequently, the Supreme Court of Washington rendered an identical

13  holding in *McCarthy v. Department of Social and Health Services*, finding that "the employer's

14  common law duty to provide a safe workplace includes a duty to provide a working environment

15  reasonably free from tobacco smoke." 759 P.2d 351, 354 (Wash. 1988).  More recently, the Sixth

16  Circuit has relied on the above cases and rejected the proposition that an employer cannot breach

17  its duty to provide safe work environment by not alleviating the harmful effects of the second-

18  hand smoke. *Wilhelm*, 65 Fed.Appx. at 978.

19     There is a reason for this trend.  Second-hand smoke contains more than fifty cancer-

20  causing chemicals and has been recognized as a known human carcinogen by numerous national

21  and international organizations.  (Compl. ¶¶ 1, 5.)  Second-hand smoke killed an estimated 49,000

22  people in the United States in 2005.  (Compl. ¶ 5.)  The U.S. Surgeon General has found both

23  short-term and long-term health hazards associated with exposure to second-hand smoke.  (Compl.

24  ¶¶ 6-7.)  Overwhelming scientific evidence, cited in Plaintiff's Complaint, points to the conclusion

25  that second-hand smoke is a health hazard.  In this respect, second-hand smoke is no different than

26  any other hazardous chemical.

27

28

1        While Wynn does not dispute that the common law may impose a duty on employers to

2   provide a safe workplace, Wynn claims that this duty does not extend to requiring employers to

3   eliminate the hazardous effects of second-hand smoke. (Mot. at 15.)  Contrary to Wynn's

4   assertion, the common law placed such a duty upon employers ever since the hazardous nature of

5   smoking was recognized.  In her Complaint, Plaintiff sufficiently pled that Wynn had a common

6   law duty to protect its employees from the harmful effects of the second-hand smoke, that Wynn

7   breached that duty by failing to take certain remedial measures to alleviate these effects, and that

8   Wynn's employees have suffered as a result. (Compl. ¶¶ 13-26, 39-43.)  The facts go well-beyond

9   threadbare allegations that merely state "Wynn harmed its employees in violation of the common

10  law" so as to render dismissal on the pleadings improper. *See Bell Atl. Corp. v. Twombly,* 550

11  U.S. 544, 547 (2007).

**1.      The Nevada Clean Indoor Air Act did not abrogate a casino's duty to provide its employees with a safe work environment.**

12

13

14      Wynn next argues that Plaintiff improperly challenges the Nevada legislature's choice to

15  allow smoking inside the casinos. (Mot. at 15-16.)  Wynn mischaracterizes Plaintiff's allegations.

16  Nowhere in her complaint does Plaintiff challenge the casino patrons' right to smoke inside

17  Nevada casinos, nor does she seek a completely smoke-free work environment.  What Plaintiff

18  does seek is for Wynn to take reasonable measures to protect its employees from a known health

19  hazard.

20      Wynn argues that it is under no obligation to mitigate the dangers posed by second-hand

21  smoke because the Nevada Clean Indoor Air Act, N.R.S. § 202.2483 ("NCIAA") specifically

22  authorized smoking in the casinos. (Mot. at 15.)  Wynn is incorrect.  Simply because the

23  legislature refused to prohibit smoking inside casinos does not abrogate Wynn's duty to provide a

24  safe work environment.  To accept Wynn's logic would enable a casino to strip out its ventilation

25  system entirely – choking off all employees from oxygen – and then cite the fact cigarette smoking

26  is not prohibited in casinos as legal support for its actions.

27

28

- 16 -

1    It is important to bear in mind that the NCIAA does not prohibit casinos from

2    implementing policies and procedures – like those alleged in the Complaint – that would help

3    protect Wynn's employees.  For example, merely because smoking is not prohibited on the casino

4    floor does not take away a casino's ability to open non-smoking tables, operate an advanced air-

5    filtration system, limit the distribution of free cigarettes, curb the ability of patrons to blow smoke

6    in dealers' faces, or take other steps to otherwise limit the exposure of non-smoking employees to

7    second hand smoke.  (Compl. ¶ 42.)

8    In any case, common law rules and principles must be expressly abrogated by statute, and

9    that statutes should be narrowly construed to keep common-law rules intact.  *Shaw v. Merchants'*

10   *Nat'l Bank*, 101 U.S. 557, 565 (1879) (holding that "[n]o statute is to be construed as altering the

11   common law, farther than its words import"); *Cal. Ass'n of Health Facilities v. Dep't of Health*

12   *Serv.*, 940 P.2d 323, 331 (Cal. 1997) (holding that "[a] statute will be construed in light of

13   common law decisions, unless its language clearly and unequivocally discloses an intention to

14   depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . .

15   ."); *Key Bank of Alaska v. Donnels*,  787 P.2d 382, 385 (Nev. 1990) (stating that "because anti-

16   deficiency statutes derogate from the common law, they should be narrowly construed"); *see also*

17   3 SUTHERLAND, STATUTORY CONSTRUCTION § 61:1 (6th ed. 2001).  Because nothing in the

18   NCIAA abrogates the established common law duty, Wynn's argument to the contrary is

19   unavailing.

20             **2.       None of the cases relied on by Wynn hold that employers do not have a**
                 **common law duty to alleviate the hazardous effects of second hand**
21               **smoke where the scientific evidence of its danger was presented.**

22   Wynn cites four cases that it claims suggest casinos have no common law duty to protect

23   workers from the dangers of second-hand smoke.  Three of Wynn's cases do not address a

24   common law duty to provide the safe workplace, and the fourth is readily distinguishable.

25

26

27

28

1    First, Wynn somehow relies on two district court cases that had nothing to do with the

2    employer – employee relationship and the common law duty to provide a safe work environment.

3    *See Tanner v. ARMCO Steel Corp.*, 340 F.Supp. 532 (S.D. Tex., 1972) (dealing with the

4    constitutional claims of a community resident against a petroleum plant for air polluting); *Gasper*

5    *v. La. Stadium & Exposition Dist.*, 418 F.Supp. 716, 716-17 (E.D. La. 1976) (dealing with the

6    constitutional claims of the non-smoking stadium visitors who argued for a smoking ban at the

7    state stadium during the sporting).  Indeed, the *Tanner* court held that neither the United States

8    Constitution nor the federal statutes provided the plaintiff a cause of action for damages allegedly

9    sustained as a result of the air polluting by a petroleum plant.  340 F.Supp. at 534-39.  Similarly,

10   the *Gasper* court held that the United States Constitution does not provide a right "to breathe

11   smoke-free air while attending events in the Louisiana Superdome."  418 F.Supp. at 722.  Both

12   cases are obviously inapplicable to the case at bar that deals exclusively with the common law

13   duty of the employers to provide safe workplace.

14   Wynn's reliance on *Fed. Employees for Non-Smokers' Rights (FENSR) v. United States* is

15   also misplaced.  446 F.Supp. 181 (D.C. 1978).  Though that case addressed second-hand smoke at

16   the workplace, its analysis focused on claimed violations of the First and Fifth Amendments to the

17   United States Constitution, not the common law.  *Id.* at 184-86 (specifically declining to address

18   the plaintiffs' common law claim for breach of duty to provide safe workplace because the court

19   lacked jurisdiction).

20   Wynn's sole remaining case, *Gordon v. Raven Sys. & Research, Inc.*, is also

21   distinguishable.  *See* 462 A.2d 10, 15 (D.C. App. 1983).  The *Gordon* court held that when a

22   plaintiff has a particular sensitivity to cigarette smoke, the employer did not owe any special duty

23   to this plaintiff and did not need to "conform [the] workplace to the particular needs or

24   sensitivities of an individual employee."  *Id.*  This holding was restricted to cases where the

25   plaintiff presented no scientific evidence of the hazardous effects of second-hand smoke on non-

26   smoking employees.  *Id.*  The instant case differs given the Complaint's detailed allegations

27   regarding the dangers of second-hand smoke specifically on non-smoking employees.  (Compl. ¶¶

28

- 18 -

1, 4-7).  This fact alone was enough for the Sixth Circuit Court of Appeals to distinguish *Gordon* and to hold that the plaintiff stated a claim for breach of duty to provide a safe workplace due to exposure to second-hand smoke.  *Wilhelm*, 65 Fed. Appx. at 977-78.

Also, unlike the plaintiff in *Gordon,* Ms. Kastroll does not claim any special sensitivity to second-hand smoke, and she does not demand a smoke-free workplace.  *See* 462 A.2d at 15.  Ms. Kastroll simply asks that Wynn take steps to alleviate the hazardous effects of the second-hand smoke at the Wynn Las Vegas gaming floor.  (Compl., Prayer for Relief.)

Finally, this Court should recall that the *Gordon* opinion was rendered in 1983, nearly thirty years ago and at a time when the dangers of second-hand smoke, though known, were not as established.  *See Gordon*, 462 A.2d at 14 (admitting that this issue "is a relatively new one in American jurisprudence").  Science and medicine have come a long way since 1983 and court holdings have evolved with the evidence.  *See Shimp*, 368 A.2d at 415-16 (imposing a duty on the employer and granting the requested injunctive relief to restrict smoking to a certain area); *Smith*, 643 S.W.2d at 12-13 (holding that plaintiff stated a claim for breach of duty to provide a safe workplace due to tobacco smoke, and finding that an injunction would be an appropriate remedy); *Wilhelm*, 65 Fed. Appx. at 977-78 (distinguishing *Gordon* and holding that plaintiff stated a claim for breach of duty to provide a safe workplace due to exposure to second-hand smoke); *McCarthy*, 759 P.2d at 354 (holding that "the employer's common law duty to provide a safe workplace includes the duty to provide a working environment reasonably free of tobacco smoke").

To summarize, Plaintiff has alleged facts showing the dangerous working conditions at Wynn caused by the toxins and carcinogens contained in second-hand smoke.  (Compl. ¶¶ 1, 4-7.)  Wynn has a duty to protect its employees from these hazardous effects and nothing in the Nevada Clean Indoor Air Act purported to abrogate this duty.  Thus, Plaintiff respectfully requests this Court to deny Wynn's Motion to Dismiss and allow Plaintiff to proceed with her claim.

**C.   Wynn's Motion to Strike Class Action Allegations Should be Denied Because Such a Rare Remedy Is Not Warranted in This Case.**

Tossing standard procedure aside and front loading the entire class certification process, Wynn asks this Court to essentially entertain a motion for class certification – and deny it – without the benefit of an answer, let alone any discovery.  This Court should deny Wynn's Motion to Strike because the issue of whether this litigation may be maintained as a class action is more properly left to the class certification process.  Wynn's cited authority neither requires nor allows a result to the contrary.

**1.   Dismissal of class allegations at the pleading stage is rarely permitted.**

Rule 12(f) authorizes a court to strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter."  F.R.Civ.P 12(f).  A motion to strike, however, "is a drastic remedy" generally disfavored by federal courts, and will usually be denied "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003) (internal citations omitted).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits.  *See* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1380.

Class allegations are especially difficult to strike.  The "dismissal of class allegations at the pleading stage should be done rarely and [] the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery."  *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotations and citations omitted); *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205 (C.D. Cal. 2008) (motion to strike only proper where class allegations must absolutely fail on the face of the complaint); *see also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (holding that "the parties should be afforded an opportunity to present evidence on the maintainability of the class action"); *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (the "propriety of class action status can seldom be determined on the basis of the pleading

- 20 -

1 | alone"); *Sirota v. Solitron Devises, Inc.*, 673 F.2d 566, 570-72 (2d Cir. 1982) (holding that it is

2 | proper for a district court to allow discovery and to conduct hearings to determine whether the

3 | requirements of Rule 23 are met); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226, 1232 (D.

4 | Nev. 2007) (denying motion to strike allegations of punitive damages before the issue of class

5 | certification is resolved).

6 |      Furthermore, the Ninth Circuit has long established liberal standards for class

7 | certifications. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (holding that "neither the

8 | possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later

9 | course of the suit might unforeseeably prove the original decision to certify the class wrong, is a

10 | basis for declining to certify a class which apparently satisfies the Rule [23]").

11 |      It is not clear from the face of Plaintiff's Complaint that a class could never be certified

12 | under the circumstances of this case.  Rather, the fact that the pleadings seek injunctive relief only

13 | and the Defendant has acted on grounds similar to all class members supports just the opposite.

14 | As a result, no basis exists for striking the class allegations at this time.

15 |         **2.**    ***Badillo* does not support striking class allegations in this case.**

16 |      Despite a wealth of authority to the contrary, Wynn argues that Plaintiff's class action

17 | allegations should be stricken because this Court denied a motion for class certification in *Badillo*

18 | *v. American Tobacco Company*, a wholly unrelated and completely inapplicable case.  202 F.R.D.

19 | 261 (D. Nev. 2001).  Indeed, even if this Court disregards the established procedural posture of

20 | class actions and reviews the *Badillo* order denying class certification as controlling authority for

21 | striking class action allegations from Plaintiff's complaint, the Court will find that *Badillo* is

22 | inapposite in several important respects.

23 |      First, the *Badillo* order was rendered on the plaintiffs' motions for class certification. *Id.* at

24 | 262-63.  This case is still at the initial pleading stages. *See Ramirez,* 524 F. Supp. 2d at 1232

25 | (declining to rely on the class certification cases to support the defendant's motion to strike

26 | argument).  Second, the *Badillo* plaintiffs sued the manufacturer of the tobacco products alleging

27 | theories of strict liability, negligence, fraud, and misrepresentation—they did addresses the duties

28 |

1    present in an employer-employee relationship or seek damages for a failure to provide a safe

2    workplace.  202 F.R.D. at 262.  Third, the *Badillo* plaintiffs sought money damages and medical

3    monitoring to detect whether the class members had contracted any diseases as a result of their

4    exposure to cigarette smoke.  *Id.* at 262-65.  Plaintiff Kastroll does not seek damages—she seeks

5    injunctive relief from her employer.  As the *Badillo* court denied class certification, at least in part,

6    on the basis that Nevada courts do not recognize the remedy of medical monitoring, the fact

7    Plaintiff Kastroll does not seek such relief renders the *Badillo* decision further inapposite.  *Id.* at

8    265.[6]

9         Finally, whereas the *Badillo* plaintiffs moved for class certification under Rule 23(b)(3),

10   *see* 202 F.R.D. at 264-65, Plaintiff's proposed class will eventually be sought for injunctive relief

11   only under Rule 23(b)(2). This is because Wynn has "refused to act on the grounds that apply

12   generally to the class." *See Badillo*, 202 F.R.D. at 264-65; F.R.Civ.P. 23(b)(2).  Hence, Wynn's

13   argument that the class allegations fail because – as the *Badillo* court found – individual issues

14   predominate, falls flat.  *See* 202 F.R.D. at 264-65; *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.

15   1998) ("[A]lthough common issues must predominate for class certification under Rule 23(b)(3),

16   *no such requirement exists under 23(b)(2)*) (emphasis added); *Adamson v. Bowen*, 855 F.2d 668,

17   676 (10th Cir. 1988) ("That the claims of individual class members may differ factually should not

18   preclude certification under Rule 23(b)(2) of a claim seeking the application of a common

19   policy.").  Indeed, as the Ninth Circuit most recently affirmed:

20       rule [23(b)(2)] does not require us to examine the viability or bases of class members'
         claims for declaratory and injunctive relief, but only to look at whether class members seek
21       uniform relief from a practice applicable to all of them. As we have previously stated, "it is
         sufficient" to meet the requirements of Rule 23(b)(2) that "class members complain of a
22       pattern or practice that is generally applicable to the class as a whole."

23

24

25

26       _____
         [6]   Wynn's reliance on *Duncan v. Northwest Airlines, Inc.* is misplaced for the same reason.
27   *See* 203 F.R.D. 601, 609 (W.D. Wash. 2001).  In that case, the court analyzed the plaintiff's
     motion for class certification as it relates to the remedy of a medical monitoring.  *Id.*  This issue is
28   not implicated in the case at bar.

                                              - 22 -

1  *Rodriguez v. Hayes*, --- F.3d ---, 2010 WL 6394, at *14 (9th Cir., Jan. 4, 2010). Plaintiff

2  Kastroll's complaint sufficiently established that class members seek uniform relief from Wynn,

3  namely, to create safe work environment by eliminating the hazardous effects of the unsafe levels

4  of second-hand smoke. (Compl. at ¶¶ 16-26, 44-49.) Thus, *Badillo* order is inapposite.

5       Lastly, while heavily relying on an unrelated *Badillo* order, Wynn fails to apprise this

6  Court about a strikingly similar case to the case at bar, *Mullen v. Treasure Chest Casino*, where

7  the Fifth Circuit affirmed the district court order certifying a class of casino employees who

8  contracted a respiratory illness due to defective ventilation system that failed to alleviate

9  "extremely smoky conditions in the Casino." 186 F.3d at 623, 629. In that case, the court found

10  that the plaintiffs had met more demanding requirements for class certification under Rule

11  23(b)(3), than lesser standard of Rule 23(b)(2) that will be implicated in this case. *See id.* at 624-

12  29.

13       Therefore, Plaintiff's class action allegations survive Wynn's unsubstantiated Motion to

14  Strike.[7]

15  **IV.   CONCULSION**

16       In its Motions, Wynn tried everything to get rid of this class action—everything but valid

17  legal arguments. Indeed, Wynn has attacked Plaintiff personally, has re-written Plaintiff's

18  complaint to fall under one of the CAFA exceptions, has questioned the standing of unnamed

19  class members, has denied the existence of its common law duty to provide safe work

20  environment, has attempted to strike class allegations from Plaintiff's complaint, and has

21  presented wholly inapplicable legal authority. Plaintiff has withdrawn the claim for a violation

22  of Nevada's Occupational Safety Act due to a lack of private remedy. Otherwise, and as shown

23

24       [7]    Wynn renews its argument that because the proposed class contains future employees, it is overbroad and thus class allegations must be stricken from the complaint. (Mot.

25  at 21.) By stating that "such 'prospective' classes have been rejected by the Supreme Court," Wynn again creates the false impression that future employees, by definition, cannot be part of a

26  certifiable class. (Mot. at 21) (citing *Matthews*, 426 U.S. at 71.) This reasoning fails for the reasons set forth in part A1 above, however, the Supreme Court in *Matthews* declined to include

27  future members in the certified class only because they lacked prior administrative review of their claims necessary in immigration-related cases, as opposed to any inherent deficiency of the

28  class definition. *Id.*

1   above, none of Wynn's attacks and arguments has merit.  Therefore, Plaintiff respectfully

2   requests this Court to deny Wynn's Motion to Dismiss and Motion to Strike in their entirety.[8]

3   Dated:  January 27, 2010

4                           Respectfully submitted,

5                           KANIE KASTROLL

6

7                           By:___ /s/ Marc Cook_____
                                   One of Plaintiff's Attorneys

8                           George Kelesis

9                           Marc Cook
                           Bailus Cook & Kelesis

10                        400 S. 4th St.
                         Suite 300

11                        Las Vegas, NV 89101
                         Tel: (702) 385-3788

12                        Fax: (702) 737-7712

13                        Jay Edelson (admitted *pro hac vice*)

14                        Steven Lezell (admitted *pro hac vice*)
                         EDELSON MCGUIRE, LLC

15                        350 N. LaSalle Ave
                        Suite 1300

16                        Chicago, Illinois 60654
                        Tel: (312) 589-6370

17                        Fax: (312) 589-6378

18

19

20

21

22

23

24

25

26

---

[8]     In the event this Court disagrees, Plaintiff respectfully requests leave to add further

27   detail, additional claims, or otherwise take steps necessary to cure any defects found by this Court.

28