James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Debra L. Spinelli, Esq., Bar No. 9695
DLS@pisanellibice.com
Jarrod L. Rickard, Esq., Bar No. 10203
JLR@pisanellibice.com
PISANELLI BICE PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada  89169
Telephone:  702.214.2100
Facsimile:   702.214.2100

*Attorneys for Defendants Wynn Las Vegas, LLC
dba Wynn Las Vegas and Wynn Resorts, Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KANIE KASTROLL, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WYNN RESORTS, LTD., a Nevada corporation d/b/a WYNN LAS VEGAS,<br><br>Defendant. | CASE NO. 2:09-cv-02034-LDG-LRL<br><br>**WYNN RESORTS, LTD.'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION** |

This case is about a local Nevada employee suing her local employer for an alleged breach of the common law duty to provide a safe workplace.  While Plaintiff Kanie Kastroll ("Kastroll") seeks certification of a class of employees whom she claims are similarly situated to her, this fact does nothing to change the local nature of this controversy.  In her Complaint, Kastroll alleges that the Class Action Fairness Act ("CAFA") grants this Court jurisdiction to hear and decide the claim she seeks to bring on behalf of herself and her peers.  However, the very same Act mandates dismissal of this action.  In particular, CAFA jurisdiction includes an express exception for local "home-state controversies."  This action falls squarely within the category of cases never intended to be litigated in federal court.  Therefore, summary judgment is in order.

1

As demonstrated in more detail below, the evidence revealed in discovery compels only one result. The undisputed records produced by Defendant Wynn Resorts, Ltd.[1] ("Wynn") prove that nearly every one of Wynn's current employees (99.6%) lives in Nevada. Moreover, while it is clear that both Wynn's former and future employees lack standing to seek injunctive relief, Wynn's records of its former employees prove that their inclusion cannot save Kastroll's case for jurisdiction, as they too are almost all Nevada residents (91%). Because there simply can be no dispute that the "home-state controversy" exception applies to Kastroll's Complaint, the Court has no jurisdiction over this case, as a matter of law.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(h)(3) and 56 and is supported by the Memorandum of Points and Authorities, attached documents and Declaration, the papers and pleadings on file herein, and any oral argument this Court may choose to consider.

DATED this 18th day of May, 2012.

PISANELLI BICE, PLLC

By:   /s/ James J. Pisanelli
James J. Pisanelli, Esq., #4027
Debra L. Spinelli, Esq., #9695
Jarrod L. Rickard, Esq., #10203
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

Attorneys for Defendants Wynn Las Vegas, LLC
dba Wynn Las Vegas and Wynn Resorts, Ltd.

---

[1] Wynn Las Vegas, LLC has been erroneously named in this action as Wynn Resorts Ltd. dba Wynn Las Vegas.

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   STATEMENT OF FACTS**

Kastroll's Complaint appears designed to smear the reputation of Wynn with a string of false and gratuitously inflammatory allegations, all centered upon second-hand smoke. According to Kastroll, the employees in harm's way include casino dealers, table games supervisors, slot floorpersons, cocktail servers, security officers, and managers. (Doc. 1, ¶ 14.) These are, not so coincidentally, the same employees Kastroll seeks to represent through her union.[2]

Lacking any federal claim or diversity citizenship, Kastroll tries to tie jurisdiction to the Class Action Fairness Act ("CAFA").  As the Court will recall, Kastroll seeks certification pursuant to Fed. R. Civ. P. 23(b)(2) of a class consisting of "[a]ll former, current, and future nonsmoking employees of Wynn Las Vegas who were, are, or in the future will be exposed to unsafe levels of second-hand smoke." *Id.* ¶ 33.  Kastroll asks for injunctive relief only and asserts one claim for common law "failure to provide a safe workplace" based upon second-hand smoke.[3] In essence, Kastroll asks this Court to override the Nevada Legislature's judgment on these very issues and judicially legislate how the gaming industry conducts its business. *Id.* ¶¶ 42, 48.

With her focus on maligning Wynn, Kastroll's Complaint fails to allege acts that, even if proven true, would trigger jurisdiction under CAFA.  Kastroll offers mere boilerplate conclusory allegations that "none of the exceptions under [CAFA] … apply to the instant action."  Her contention is demonstrably false. CAFA jurisdiction is subject to a well-understood exception for a "home state controversy."  This exception applies when two-thirds or more of a proposed class, and the primary defendant, are citizens of the forum state.  And, it dictates that a court "shall decline to exercise jurisdiction" on such a purely local case.  Because almost the entirety of

---

[2]   While the Court may question why Kastroll would ever initiate an action in a forum where jurisdiction is so plainly lacking, her motives were clarified during the parties' prior motion practice.  As the Court will recall, the timing of Kastroll's Complaint coincided with a protracted union negotiation between Wynn and some of its employees.  Kastroll is the president of a local union who has fought for years to unionize a certain group of Wynn's casino workers.

[3]   Following Wynn's Motion to Dismiss, Kastroll withdrew her claim for "breach of statutory duty to provide a safe workplace" pursuant to N.R.S. § 618.375.

3

Wynn's workforce (and therefore Kastroll's proposed class) understandably chooses to live in the state of their employer, the "home state controversy" mandates that the Court refuse jurisdiction over this action.

## II.  PROCEDURAL STATUS

As the Court will recall, Wynn raised the home-state controversy exception to CAFA earlier in this proceeding by way of a Motion to Dismiss.  (*See* Doc. 13.)  In her Opposition, Kastroll did not dispute the law or Wynn's proof.  Rather, she claimed, among other things, that any inquiry into standing was premature until the Court addressed class certification issues.  (*See e.g.*, Doc. 18 at pg. 8:23-24.)  Ultimately, the Court concluded that it needed more facts.  Although the Court "acknowledge[d] the novel issues raised by Wynn's argument," it held that "later litigation stages more naturally facilitate a determination of the proper scope of Kastroll's proposed class."  (Doc. 24 at pg. 3:3-5.)  As such, the Court denied Wynn's Motion and held that it would "further entertain arguments regarding the proper scope of Kastroll's proposed class during later stages of this action." *Id.* at pg. 3:5-7.

Following the Court's Order, the parties engaged in written and deposition discovery.  During this discovery, Wynn produced records corroborating its claim that the "home-state controversy" exception applies.  As Wynn's records confirmed, the percentage of its employees calling Nevada their home far exceeded the two-thirds threshold needed for CAFA's exception to apply.  In particular, while Wynn has a total of 11,604 active employees, only 42 (.4%) claim to live out of state. (Ex. 1, ¶ 5.)  Additionally, while Wynn's former employees undoubtedly lack standing to join as plaintiffs in this action for injunctive relief, Wynn's records confirm that far more than two-thirds of these individuals reside in Nevada as well.  Specifically, only 1,370 of 15,686 former Wynn employees (9%) call any other state their home.  *Id.*, ¶ 8.

Tellingly, upon reviewing Wynn's records and deposing the agent whom Wynn appointed to speak on its behalf regarding this topic, Kastroll concluded that no further class discovery was needed for the Court to rule on the parties' jurisdiction debate.  (Doc. 64.)  As Kastroll and her counsel admitted, this topic is now ripe for the Court's adjudication and Wynn's evidence resolves

1  any possible question of fact. *Id.*[4] As shown below, the Court's review of the undisputed records
2  produced by Wynn lead to one result: the "home state" exception requires the Court to grant
3  summary judgment as it lacks subject matter jurisdiction.

**III.   ANALYSIS**

      **A.   <u>CAFA's Relaxed Jurisdiction Includes an Exception for Local Controversies</u>.**

As the Court is aware, "[t]he defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing FRCP 12(h)(3), *Csibi v. Fustos*, 670 F.2d 134, 136 n. 3 (9th Cir.1982); Wright & Miller § 1393, at 863-64.); *Mallard Auto. Group, Ltd. v. United States*, 343 F. Supp. 2d 949, 952-53 (D. Nev. 2004) (stating subject matter jurisdiction is a "threshold" issue that may be raised at any time by any party). Moreover, "[i]n ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Id.* (citing *Thornhill Publishing Co. v. General Telephone Corp.*, 594 F.2d 730, 733 (9th Cir.1979)). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Thornhill*, 594 F.2d at 733).

Owing to her lack of any federal claim or diversity, Kastroll seeks to rely upon the Class Action Fairness Act's expanded allowance for subject matter jurisdiction. Under CAFA, district courts have "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs", the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d); *see Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007).

---

[4]   In particular, Kastroll stipulated that "based upon the discovery and depositions that have occurred thus far, the parties agree that the Court should adjudicate the question of whether this Court lacks subject matter jurisdiction under the CAFA's 'home state controversy' exception and see no need to further delay the adjudication of this issue." (Doc. 64.)

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

Congress, however, balanced that expansion by including express exceptions to CAFA jurisdiction for home-state and local controversies.  In particular, CAFA mandates that a federal court "***shall decline to exercise jurisdiction***" if more than two-thirds of the putative class members are citizens of the forum state, and all of the primary defendants are citizens of the forum state.  28 U.S.C. § 1332(d)(4)(A) (emphasis added).  After all, Congress enacted CAFA in response to abusive practices by plaintiffs and their attorneys in litigating major *interstate* class actions in state courts which had, among other things, "adversely affected interstate commerce," and "undermined public respect for our judicial system."  *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 47 (1st Cir. 2009) (citing CAFA, Pub.L. No. 109-2, § 2(a), 119 Stat. 4, 4 (2005)).  Because purely local or home-state controversies do not implicate these concerns over interstate commerce, Congress expressly mandated that they be excluded from CAFA's reach.

By adding this exception, Congress was clear that CAFA should not be used as a tool (or weapon) in a forum shopping debate where the controversy is local in nature.  That Congress called for mandatory dismissal of such actions speaks volumes.  This is, of course, of great import in the instant action, which involves a Nevada plaintiff who is suing her Nevada employer for an alleged violation of a heretofore non-existent Nevada common law duty – a local controversy by any measure.  Nothing about Kastroll's case touches upon interstate concerns because there are none.  Accordingly, this case does not belong in this Court.

**B. The Class Action Fairness Act Requires This Court To Decline Jurisdiction Over This Local Controversy.**

*1. Future Wynn employees do not have Article III standing to be before this Court.*

As shown, Kastroll seeks to certify a class consisting of [a]ll former, current, and future nonsmoking employees of Wynn Las Vegas who were, are, or in the future will be exposed to unsafe levels of second-hand smoke."  However, for Wynn's future employees, Kastroll claims that her definition includes "any out-of-state ***job applicant*** for a casino position at the Wynn." (Plt's 2d Supp'l Rog Responses, attached hereto as Ex. 4 at pg. 5:11) (emphasis added).  In other words, Kastroll claims to represent not only the interests of Wynn's actual employees but also any and all future ***job applicants*** who try to obtain employment at Wynn.  This she cannot do.  Neither

6

Wynn's future employees nor its future applicants have standing to be included in Kastroll's proposed class.

To establish standing, a plaintiff must show, among other things, that he or she suffered an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (defining "injury in fact" as "an invasion of a legally protected interest which is concrete and particularized"); *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974). Article III standing requirements do not change when one files suit on behalf of a purported class of persons. "Congress did not expand the jurisdiction of the federal courts by adopting Rule 23 of the Federal Rules of Civil Procedure."[5] *Strong v. Arkansas Blue Cross & Blue Shield Inc.*, 87 F.R.D. 496, 508 (D.C. Ark. 1980). All members of a purported class – whether they are named or unnamed – must have standing to bring the alleged claims on his or her own. *See Sanders v. Apple Inc.*, --- F.R.D. ----, 2009 WL 150950, at *10 (N.D. Cal. 2009) (stating that all class members must possess Article III standing) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d. Cir. 2006). "The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right." *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.C.S.D. 1982).

Future employees or applicants, "by definition, . . . do[] not exist in any but the most abstract sense." *Moore v. W. Penn. Water Co.*, 73 F.R.D. 450, 453 (D.C. Pa. 1977) (defining future employees as "an amorphous, phantom group, incapable of identification in terms of both individuals and numbers") (internal quotation omitted). Because "future employees" "do not [yet] exist, they are incapable of being 'injured in fact'". *Strong*, 87 F.R.D. at 508. A litigant without an injury-in-fact lacks standing to seek relief from this Court. *Id.*; *Moore*, 73 F.R.D. at 450 ("[B]oth logic and policy dictate that the purported class cannot be defined to include future employees."); *Lamb v. Hamblin*, 57 F.R.D. 58, 60 (D. Minn. 1972) (holding that purported class

---

[5]   This analysis regarding injury-in-fact and a lack of standing is not, in any way, affected by the passage of the Class Action Fairness Act. The expanded federal jurisdiction for class actions brought under 28 U.S.C. § 1332(d) concern "minimal diversity" and aggregation of claims for purposes of calculating the $5,000,0000 jurisdictional minimum under this statute. Nothing in CAFA eliminates the injury-in-fact Article III standing requirement.

members who "will be" affected in the future are "unidentifiable and lack standing to bring suit in their own right").

Moreover, a "threatened" injury is insufficient to satisfy Article III's "case or controversy" requirement. *See Minority Police Officers Ass'n of South Bend v. City of South Bend*, 555 F. Supp. 921, 924-25 (D.C. Ind. 1983) (holding that claims of future employees could not be litigated); *See, e.g., Selzer v. Bd. of Ed.. of City of New York*, 112 F.R.D. 176, 182 (S.D.N.Y. 1986) (holding that inclusion of future employees "is not necessary to protect whatever rights they may possess" because any injunctive relief granted "will redound to the benefit of these persons in any event"). Of course, any claims the "future" employees or applicants may acquire are prospective. In other words, the possible claims are not yet ripe for consideration by this Court. *Strong*, 87 F.R.D. at 508.

Applying Article III's standing requirements, the Federal Magistrate assigned to this matter previously precluded Kastroll from conducting discovery into Wynn's recruiting efforts. (Doc. 46 at pg. 10:1-9.) As the Magistrate held, "discovering recruiting efforts or methods will not lead to information that is relevant to class certification, as ***potential employees cannot become members of the class*** and it is impossible to predict who could possibly be hired in the future." *Id.*[6] (emphasis added). Thus, as a matter of law, future employees and applicants – whoever they may be – do not have an injury-in-fact that this Court can remedy

### 2. Past Wynn employees do not have Article III standing to seek the injunctive relief sought in this case.

Nor can Kastroll remedy this Court's lack of subject matter jurisdiction by asserting that she represents claims of former employees either. Former employees do not have standing to seek injunctive relief against the Wynn. *See, e.g., In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2008 WL 3179315, *17 (D. Nev. June 20, 2008)

---

[6] The Magistrate's Order further provides that, "who is recruited and how the recruiting is done does not in any way relate to the issue of class certification or the home state controversy exception. Anyone recruited and ultimately employed at Wynn, regardless of their domicile at the time of recruitment, will most likely move to and become domiciled in Las Vegas. Therefore, the possible future employees' domicile at the time of recruitment would have no bearing on the applicability of the home state exception defense." (Doc. 46 at pg. 10:1-9.)

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

(denying class certification where "a large percentage of the class will be former Wal-Mart employees who could not seek injunctive or declaratory relief, as they have no standing to seek such relief."); *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1189 (9th Cir. 2007); *see also Milligan v. Am. Airlines, Inc.* 327 Fed. Appx. 694, 696, (9th Cir. 2009) (affirming summary judgment against former employee plaintiff seeking injunctive relief against former employer).

One element of Article III standing is that a favorable decision by the court would provide redress to the individual plaintiff. *Lujan*, 504 U.S. at 560. Former employees seeking injunctive relief against their former employer "would not stand to benefit" from any prospective relief. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033 (9th Cir. 2006) (recognizing that former employees lack standing to seek injunctive relief because they "would not stand to benefit from an injunction requiring the anti-discriminatory policies [to cease] at [their] former place of work."). Additionally, in cases where a plaintiff seeks injunctive relief, there must be a "real or immediate threat of an irreparable injury" to that plaintiff. *Clark v. City of Lakewood,* 259 F.3d 996, 1007 (9th Cir. 2001); *see also Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) ("When evaluating whether [the standing] elements are present, we must look at the facts 'as they exist at the time the complaint was filed.'").

Here, while their inclusion may "beef up" Kastroll's Complaint, former Wynn employees do not, as a matter of law, have standing to seek injunctive relief of the nature sought in this case. They are former employees. There is no "real or immediate threat of irreparable injury" to these former employees stemming from the current workplace conditions (even assuming they are unsafe, which they are not). And, even if this court were to grant the injunctive relief Kastroll seeks, such relief would provide no redress or benefit to former Wynn employees. Thus, Kastroll cannot, as a matter of law, bring claims on their behalf. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing.").

### 3. *The home state controversy exception mandates dismissal of Nevada residents' claims against a Nevada corporation.*

While Wynn's former employees clearly lack standing, the "home-state controversy" exception applies even if the Court assumes they are a part of Kastroll's class. As shown, the

Court "shall decline to exercise jurisdiction" if both prongs of this exception are met. *See Serrano*, 478 F.3d at 1023 (stating that the CAFA provision is an exception to jurisdiction and "not part of the prima facie case for establishing minimal diversity under CAFA"); *accord Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006) (holding § 1332(d)(4)(A) and (B) are "express exceptions" to § 1332(d)(2)'s grant of jurisdiction). These prongs require that (1) the primary defendant is a resident of the forum state; and (2) more than two-thirds of the putative class members are citizens of the forum state. 28 U.S.C. § 1332(d)(4)(A).

Here, Wynn is the one and only Defendant and is a Nevada corporation with its principal place of business in Nevada. (*See* Ex. 5 hereto; *see also* Doc 1, ¶ 9.) Thus, Wynn is unquestionably a Nevada resident for purposes of any jurisdictional diversity analysis. Moreover, Kastroll is a Nevada resident as well. (Doc. 1, ¶ 8.) Accordingly, the true focus of the jurisdictional analysis is on the putative class members with standing.

Unremarkably, in order to physically work at the Wynn Las Vegas and experience the working conditions that are the only basis of Kastroll's claims, one must live in relative proximity to the Las Vegas hotel and casino. As demonstrated by Wynn's employment records and the authenticating declaration attached hereto as Exhibits 1-3, the residency of current Wynn Las Vegas employees falls just shy of unanimity (*i.e.*, 99.6%). (Ex. 1, ¶ 5.) Out of 11,604 total active employees, 11,562 are Nevada residents and 42 are residents of another state. *Id.* The same is true for Wynn's former employees. In particular, 14,316 out of 15,686 total former employees (91%) are Nevada residents, leaving just 1,370 as residents of another state. *Id.*, ¶ 8. To say that Wynn has satisfied the home state controversy exception is a gross understatement. As such, jurisdiction must be declined as a matter of law.

## IV. CONCLUSION

Kastroll's case for subject matter jurisdiction is not even close. Both the law and Wynn's undisputed evidence compel this Court to decline jurisdiction over this purely local dispute.

DATED this 18th day of May, 2012.

PISANELLI BICE, PLLC

By: /s/ James J. Pisanelli
James J. Pisanelli, Esq., #4027
Debra L. Spinelli, Esq., #9695
Jarrod L. Rickard, Esq., #10203
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

Attorneys for Defendants Wynn Las Vegas, LLC
dba Wynn Las Vegas and Wynn Resorts, Ltd.

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169