Jay Edelson (admitted *pro hac vice*)
Steven L. Woodrow (admitted *pro hac vice*)
EDELSON MCGUIRE, LLC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

George Kelesis
Marc Cook
Bailus Cook & Kelesis, LTD
400 S. 4th St., Suite 300
Las Vegas, NV 89101
Tel: (702) 385-3788
Fax: (702) 737-7712

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KANIE KASTROLL, on her own behalf and
on behalf of all others similarly situated,

       Plaintiff,

       v.

WYNN RESORTS, LTD. a Nevada
corporation d/b/a WYNN LAS VEGAS,

       Defendant.

Case No. 09-cv-2034-LDG-VCF

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

## I.   INTRODUCTION

This case is not the local controversy that Wynn portrays it to be. Rather, this case is about a crucial safety issue at the job site of a major gaming resort, the resolution of which will affect over eleven thousand current, former, and future employees hailing from at least 30 states. This is exactly the type of case that the Class Action Fairness Act ("CAFA") envisioned to be litigated in federal court. As such, this Court should retain jurisdiction.

In its transparent effort to prevent the Court from ruling on the merits of this case, Wynn tries anything and everything, including attacking Ms. Kastroll personally, questioning Ms. Kastroll's motives for bringing this case, unilaterally rewriting Plaintiff's class definition, and burdening the Plaintiff and the Court with voluminous—but inaccurate and outdated—charts and

1    spreadsheets. The problem for Wynn is that, despite all of the unnecessary information it chooses

2    to include, the Motion for Summary Judgment noticeably lacks conclusive proof, by a

3    preponderance of the evidence or otherwise, that over two-thirds of Plaintiff's proposed class

4    members enjoy Nevada citizenship.

5            At bottom, the issue before this Court is simple: if all former and future employees of the

6    Wynn are considered as Class members (as they should be), has Wynn met its burden of showing

7    where they reside? As Wynn has failed to provide any evidence regarding residencies of future

8    employees, and because Wynn's records of residencies of its former employees are inaccurate and

9    outdated, the answer is simple: it has not. Therefore, Summary Judgment cannot be granted in

10   Wynn's favor.

11           **II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

12           Ms. Kanie Kastroll, a full time blackjack dealer at the Wynn Las Vegas Resort and Casino

13   ("the Wynn"), stood up to one of the most powerful companies in Nevada when she filed her

14   complaint against her employer seeking justice for herself and fellow employees of the Wynn who

15   are constantly exposed to second hand smoke. *See* Compl. ¶¶3, 27-29. Ms. Kastroll alleged that

16   Wynn failed to provide its employees a safe workplace environment because the levels of second

17   hand smoke at the Wynn are dangerous and threaten the employees' health. Compl. ¶¶ 24-26.

18   Having filed her Complaint in this Court as a class action under CAFA, Ms. Kastroll has sought to

19   represent "all former, current, and future nonsmoking employees of Wynn Las Vegas who were,

20   are, or in the future will be exposed to unsafe levels of second-hand smoke." Compl. ¶ 33.

21           Wynn has mounted an aggressive defense. First, it filed a motion to dismiss claiming that:

22   (1) this Court lacks jurisdiction because of the applicability of the home state controversy

23   exception, and (2) Wynn does not owe any duty to its employees when it comes to second hand

24   smoke. (Dkt. 13.) Wynn also filed a motion to strike Plaintiff's class allegations because it

25   disagreed with Plaintiff's class definition. (*See id.*) This Court denied both motions in their

26   entirety, though admittedly the Court said that Wynn's home state controversy defense was better

27   left for a later stage of the litigation. (Dkt. 24.)

28

The Parties thereafter engaged in a series of discovery disputes that required Plaintiff to twice move to compel the production of discovery responses and deposition witnesses. (*See, e.g.*, Dkts. 35, 37, 38, 50-52.) Facing a Court order that required Wynn to produce its Rule 30(b)(6) designees, Wynn eventually produced its witnesses for examination, including a witness specifically designated to testify regarding the citizenship and residencies of Wynn employees. As Wynn has indicated that its production on this issue is full and complete, Kastroll stipulated to the briefing of the issue of the Court's jurisdiction, to put this issue behind the Parties, move on to class certification, and, finally, onto the merits of Ms. Kastroll's case. (*See* Dkt. 63.)

Accordingly, believing that its materials are enough to remove any issue of material fact with respect to the home state controversy exception, Wynn has moved for summary judgment on this defense. (Dkt. 65.) As explained below, this Court should deny the Motion.

### III.    ARGUMENT

The Court should deny Wynn's Motion for Summary Judgment because Wynn has failed to meet its burden of showing the applicability of the CAFA home state controversy exception. Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In addition, all justifiable inferences must be viewed in the light most favorable to the non-moving party. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

Further, the Ninth Circuit has held that "once federal jurisdiction has been established under [CAFA], the objecting party bears the burden of proof as to the applicability of any express statutory exception." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) (noting that "each of our sister circuits to address this issue has reached the same conclusion."). A party claiming the applicability of the home state controversy exception, therefore, must prove the

3

statutory citizenship of the class by a preponderance of the evidence. *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 793, 798 (5th Cir. 2007). "[T]he party bearing the burden of proof is not entitled to the benefit of the doubt." *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010). Rather, the home state controversy "exception is intended to be narrow, with all doubt resolved in favor of exercising jurisdiction over the case." *Opelousas General Hosp. Authority v. FairPay Solutions, Inc.*, 655 F.3d 358, 360 (5th Cir. 2011) (quoting *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006)).

As explained further below, Wynn's argument in favor of the applicability of the home state controversy exception fails on three grounds. First, Wynn impermissibly asks the Court to exclude future employees from the proposed class for lack of standing. An inquiry into standing of unnamed class members, however, is entirely premature prior to a motion for class certification. Regardless, Wynn's standing argument fails on its own terms. The Ninth Circuit Court of Appeals and district courts in this Circuit routinely certify classes consisting of future employees. Wynn therefore bears the burden of showing that the exception applies equally to future members of the proposed class. To that end, without having produced any evidence whatsoever regarding residencies of its future employees, Wynn has failed to meet its burden.

Second, Wynn's contention that former employees lack standing to seek injunctive relief fails to account for those former employees who would apply to return to Wynn if work conditions improved. Moreover, the records offered by Wynn to establish the residencies of its past employees are at best inaccurate and outdated.

Finally, Wynn's documents showing residencies of its current employees are likewise inaccurate and should not be given weight by this Court. Accordingly, taking the Class as proposed by Plaintiff and resolving any doubts regarding the actual residencies of the proposed Class members in Plaintiff's favor, this Court should hold that Wynn failed to carry its burden of

showing that the home state controversy exception applies and deny Wynn's Motion for Summary Judgment in its entirety.

> **A.      Future Employees Are Legitimate Class Members, and Wynn Has Not Met Its Burden of Showing What Percentage of Them Come From Out of State.**

Wynn's argument for excluding future employees from the proposed Class rests on two erroneous premises. First, Wynn states that "[a]ll members of a purported class – whether named or unnamed – must have standing to bring the alleged claims on his or her own." (MSJ at 7.) Second, Wynn states that "[b]ecause future employees do not yet exist, they are incapable of being injured in fact." *Id.* (internal quotations omitted). Both contentions rely exclusively on case law that is either inapposite, out of date, or wholly nonbinding on this Court. To the contrary, it is well established in this Circuit that absent class members need not prove Article III standing before the class is certified, as long as the named plaintiff has standing and adequately represents the class. *See* NEWBERG ON CLASS ACTIONS § 2:3 (5th ed. 2011); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). As a result, courts in the Ninth Circuit have routinely certified classes that include future employees of a defendant. Because Wynn has presented no evidence whatsoever regarding whether it recruits out of state or what percentage of its applicants claim citizenship outside of Nevada, it has not met its burden of showing that the home state controversy exception applies.

> **1.      Future employees, as absent class members, do not need to establish Article III standing before the class is certified, and Wynn's authority to the contrary is inapposite.**

Wynn urges the Court to exclude future employees from the proposed class on supposed standing grounds. But the standing of unnamed class members has no place at this stage of the proceedings. Indeed, prior to a ruling on class certification, "potential class members are mere passive beneficiaries of the action brought on their behalf." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974). These passive beneficiaries "need not make any individual showing of standing because the standing issue focuses on whether the named plaintiff is properly before the

court, not whether represented parties or absent class members are properly before the court." 1 NEWBERG ON CLASS ACTIONS § 2:3 (5th ed. 2011); *see also Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In a class action, the question of whether the plaintiff may be allowed to present claims on behalf of other do not depend on the standing of the absent class members, but on an assessment of typicality and adequacy of representation of the named plaintiff.") (citing *Lewis v. Casey*, 518 U.S. 343, 395 (1996)); *Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.,* 759 F. Supp. 1498, 1501 (W.D. Wash. 1991) ("The only plaintiffs whose claims may be considered in deciding whether plaintiffs have standing to bring this lawsuit are the named plaintiffs."); *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516, 524 (M.D. Ala. 1992) ("The defendants also suggest that each member of the plaintiff class must satisfy an individualized standing inquiry. Authority to the contrary could not be clearer.").

The necessary inquiry, therefore, is not whether absent class members have standing, but whether the proposed class satisfies the requirements of Rule 23. NEWBERG § 2.6 ("once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."); *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.").

Wynn's argument that unnamed class members must establish standing before the Court has certified the class is therefore entirely without merit. Unsurprisingly, none of the cases Wynn cites supports its position. In *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875 (D.S.D. 1982), and *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009), the courts did not exclude proposed class members on standing grounds for the purposes of determining jurisdiction under CAFA.

Instead, the courts in those cases ruled on the certifiability of the class under Rule 23(a). Similarly, in *Denny v. Deutsche Bank AG*, a case cited in *Sanders* and parenthetically cited by Wynn, the appellants challenged class certification "on the ground that the class included members who suffered no 'injury-in-fact' *at the time of certification.*" 443 F.3d 253, 262 (emphasis added).

Essentially, Wynn asks the Court to exclude a portion of the proposed class without regard to the analysis required by Rule 23—a request for which there is no authority. The Supreme Court explicitly rejected such a tactic in *Ortiz*, when it stated that "petitioners call the class claims nonjusticiable under Article III . . . But the class certification issues are 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing." 527 U.S. at 830-31 (citations omitted).

The issue presently before the Court is not class certification under Rule 23 but rather the applicability of CAFA's home state controversy exception. Wynn has failed to present any evidence to show that Rule 23 certification is inappropriate and cannot avoid its burden by excluding part of the proposed Class on improper grounds. This Court should bar such tactics.

> **2.** **Future employees as a group are sufficiently definite and ascertainable to belong to a class, and courts routinely certify injunctive relief classes consisting of future employees.**

Building on its misplaced standing argument, Wynn further errs in contending that future employees do not belong in the proposed Class because they are categorically an "amorphous, phantom group, incapable of identification." (MSJ at 7) (quoting *Moore v. W. Penn. Water Co.*, 73 F.R.D. 450, 453 (D.C. Pa. 1977)). This contention is directly at odds with Ninth Circuit precedent. *See, e.g., Rodriguez v. Hayes*, 591 F.3d 1105, 1118, 1126 (9th Cir. 2010) (holding that "the inclusion of future class members in a class is not itself unusual or objectionable" and reversing the denial of certification in a case seeking injunctive relief for future detainees for more than six months without a bond hearing); *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) ("the fact that [a] class includes future members does not render the class definition so vague as to preclude certification.")

Numerous other Ninth Circuit opinions have upheld class actions that include future class members. *See, e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 805 (9th Cir. 2010) (holding that the district court abused its discretion in denying certification of a class of certain former, current, and future non-exempt hourly employees of the defendant); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 848 (9th Cir. 2000) (discussing a class certified for injunctive relief under Rule 23(b)(2) comprised of "all female flight attendants employed by United, currently or in the future"); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 741 (9th Cir. 1984) ("The class certified in the present action includes all existing and future black students who are or become eligible to attend the District's schools during the pendency of this action."); *Blake v. City of Los Angeles*, 595 F.2d 1367, 1370 (9th Cir. 1979) (District court certified a class of "women who are past, present, and future applicants for, employees in, and retirees from sworn positions in the LAPD" for injunctive relief under Rule 23(b)(2)).

These and other cases demonstrate conclusively that future employees and other future members may be validly included in certifiable classes seeking injunctive relief.[1] *See Shields v. Walt Disney Parks & Resorts US, Inc.*, 2011 WL 7416335, at *1-2, 5 (C.D. Cal. June 29, 2011) (certified class included future visitors to theme park who reside out of state) (citing *Rodriguez*, 591 F.3d at 1118); *see also Wilmington Firefighters Local 1590 v. City of Wilmington*, 109 F.R.D. 89, 92 (D. Del. 1985) (holding that "future members are properly included within the class definition, in order to insure that any injunctive relief won by the named plaintiffs runs in their favor").

The reasoning in *Shields* and *Wilmington Firefighters* is consonant with the facts of the present case. Two out-of-state residents, Ms. Adonia Muneno (California) and Mr. Donald Anderson (New York) submitted Declarations stating that they are ready, willing, and able to

---

[1] Therefore, and without having a benefit of the briefing on class certification, Magistrate Judge Ferenbach erred in denying Plaintiff's request for discovery into Wynn's recruiting efforts by holding that future employees cannot be class members because "it is impossible to predict who could possibly be hired in the future." (Dkt. 46, p. 10.) As demonstrated above, such holding is contrary to established Ninth Circuit precedent.

apply for a dealer position with the Wynn but are hesitant to do so due to the second hand smoke situation at the Wynn casino. *See* Declaration of Adonia Muneno attached hereto as Exhibit 1 ("Muneno Decl.") ¶ 8; Declaration of Donald Anderson attached hereto as Exhibit 2 ("Anderson Decl.") ¶ 8. As such, Wynn's "alleged conduct and/or policies" "continue to affect" them and other future employees of the Wynn.

In its effort to exclude future employees from Ms. Kastroll's Class, Wynn inexplicably ignores all of this Ninth Circuit precedent and invites the Court to follow contrary, non-binding and outdated opinions from district courts in Arkansas, South Dakota, and Pennsylvania. This Court should decline such an invitation and hold that future employees of the Wynn are rightful members of the proposed Class for the purposes of CAFA jurisdiction.

>        **3.     Wynn recruits out of state and failed to accurately show how many**
>                 **employees come to work for the Wynn who are citizens of states other**
>                 **than Nevada at the time the Complaint was filed.**

Once future employees are considered as Class members for the purposes of the home state controversy exception (as they should be), Wynn's Motion falls flat, as it is completely devoid of any information regarding these employees' citizenship.[2] Although Wynn could have shown where it recruits its employees, where job applications come from (since the only way to apply for a job at the Wynn is online through its website www.wynnjobs.com) or what effort it has taken to ascertain the citizenship of its employees, it has not done so. *See* Excerpts from the Transcript of the Deposition of Courtney Swanson, Wynn's 30(b)(6) agent, attached hereto as Exhibit 3 ("Swanson Dep. Tr.") at 25:19-25.

In truth, Wynn in fact recruits out of state. For example, in on around July 2008, Wynn used "skywriting" advertising technique to advertize its open positions in Newport Beach, California.  *See* A. Edelstein, Wynn Hiring Wave Spreads to So Cal, *available at* http://www.skytypers.com/pr_news.html (last visited June 3, 2012) and attached hereto as Exhibit

---

[2] Citizenship in Nevada depends in part on the employees' domicile (*see* NRS 41.191) which allows for Nevada residents to remain citizens of states other than Nevada if they intend to one day return (NRS 41.191). Residents may file declarations of domicile to indicate whether they intend to reside permanently in Nevada. Wynn has offered no declarations under either NRS 41.191 or 41.193 or any other information regarding the respective declared domiciles of its employees.

4. Further, it "is estimated that at least 30%" of all job applications submitted on the first day of hiring for the Encore tower positions "came from people living in Southern California and Arizona." *See* H. Beale, A Call to Action, *available at* http://www.casinoconnectionnevada.com /issue/vol_4__no__8__august_2008/article/ a_call_to_action (last visited June 3, 2012).

As Ms. Swanson testified, Wynn's recruitment website, www.wynjobs.com, is accessible by candidates located anywhere in the United States and abroad, not just in Nevada.  *See* Swanson Dep. Tr. 49:7-15. The website itself unambiguously states that out-of-state applicants are considered. *See* Wynn Jobs – Frequently Asked Questions, *available at* http://www.wynnlasvegas.com/wynnjobs /faq.html (last visited June 3, 2012). As such, the hiring process itself encourages out-of-state candidates to apply.

Finally, two Class members – future employees from New York and California – have submitted Declarations in support of this Opposition stating that they are experienced dealers and that they monitor Wynn's recruiting website for open positions. Muneno Decl. ¶ 6; Anderson Decl. ¶ 6. Both declarants also stated that they would have been ready, willing and able to apply for a dealer position at the Wynn but for second hand smoke. Muneno Decl. ¶ 8; Anderson Decl. ¶ 8. It further shows how out of state applicants and future employees of the Wynn are directly affected by the resolution of this case.[3]

Accordingly, future employees belong to the Plaintiff's Class, and it would require unreasonable speculation for this Court to guess where they claim citizenship. Wynn could have

---

[3] Respectfully, Judge Ferenbach also incorrectly concluded that residencies of future employees are irrelevant for the purposes of class certification or the home state controversy exception because "[a]nyone recruited and ultimately employed at Wynn, regardless of their domicile at the time of recruitment, will most likely move to and become domiciled in Las Vegas." (Dkt. 46, p. 10.) This reasoning is flawed for two reasons. First, it conflates two distinct groups of class members – future and current employees. As demonstrated above, future employees are a separate category of class members with their own rights and interest in resolution of this case, apart from Wynn's current employees. *See, e.g.,* Muneno Decl. ¶ 8 (stating that Ms. Muneno would have applied to work at the Wynn but for second hand smoke). Second, Judge Ferenbach's ruling overlooks the plain language of CAFA itself which states that "[c]itizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint . . . ." 28 U.S.C.A. § 1332 (d)(7). Thus, contrary to Judge Ferenbach's reasoning, it is irrelevant whether future employees move to Las Vegas *subsequently*. All that matters is where they were citizens on the date the Complaint was filed.

1  but ultimately chose not to provide any evidence on this issue. As such, its Motion for Summary

2  Judgment should be denied.

3      **B.**    **Former Employees Are Proper Class Members, and Wynn Has Not Met Its**

4            **Burden of Showing Where They Reside.**

5      Former employees are likewise proper class members in this case, because they claim they

6  would return to work for the Wynn again if the second-hand smoke problem is addressed by the

7  management. However, Wynn has not shown (nor can it) by the preponderance of the evidence

8  where its former employees reside. Accordingly, material facts directly relevant to the

9  applicability of the home state controversy exception are at issue—precluding summary judgment

10  in this case.

11        **1.**    **Former employees belong to the Class because they claim they would**

12             **return to the Wynn if working conditions improved.**

13      The Court should not exclude from the proposed class former employees who would seek

14  to return to Wynn if working conditions improved. Wynn correctly states that former employees,

15  as a general rule, do not have standing to seek injunctive relief.  (MSJ at 8.)  However, this general

16  rule does not apply in the Ninth Circuit when there is evidence that former employees are willing

17  to return and work for the employer again hereby standing to benefit from a favorable outcome of

18  the case. *Walsh v. Nevada Dept. of Human Resources,* 471 F.3d 1033, 1036-37 (9th Cir. 2006)

19  (finding that "case law in this circuit indicates that a non-employee may have standing to sue for

20  injunctive relief against an employer, but those non-employees were in the process of seeking

21  reinstatement to their former positions, or seeking work from that employer").

22      Indeed, in *Walsh*, the Ninth Circuit held that a former employee of the state department

23  could not seek injunctive relief from her former employer, but only because there was no evidence

24  that she was seeking to return. *Id.* The Court found that there "is no indication in the complaint

25  that Walsh has any interest in returning to work for the State or the Department. Therefore, she

26

27

28

11

would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work." *Id.*

It follows then, that if there is sufficient evidence to determine that former employees have interest in returning to work for the employer again, they have standing to seek injunctive relief because they will benefit from an injunction sought against the employer. *Labriola v. Bank of Am., Nat. Ass'n*, 2012 WL 1657191, at *6-7 (N.D. Cal. May 10, 2012) (holding that "where a plaintiff may return to work for his former employer, he may benefit from an injunction changing its employment practices, and therefore has standing") (citing *Walsh*, 471 F.3d at 1037).

In *Labriola*, the plaintiff, a former employee of a bank, sought injunctive relief under California's Unfair Competition Law. 2012 WL 1657191, at *6-7. The court noted that the plaintiff "quit his job with Defendant after eighteen years of employment; he was not fired, and there is no indication in the complaint that he could not be re-hired by Defendant as a financial advisor if he so desired." *Id.* As a result, the plaintiff had standing to seek an injunction because "there is a prospect that he may return to work for Defendant and be subjected to the challenged policy again in the future." *Id.; see also Shields*, 2011 WL 7416335, at *24.

Here, six putative class members – former employees of the Wynn – clearly and unambiguously expressed their intention and desire to return and work for the Wynn again if the second-hand smoke conditions in the casino improved. *See* Declaration of Tracy Trapani attached hereto as Exhibit 5 ("Trapani Decl.") ¶ 9 (stating that Ms. Trapani is willing to return to work for the Wynn again if the Wynn management took appropriate steps to improve the air quality and second hand smoke situation in the casino); Declaration of Kathleen Bell attached hereto as Exhibit 6 (Bell Decl. ¶ 8) (same); Declaration of LeRoy Shingoitewa attached hereto as Exhibit 7 ("Shingoitewa Decl.") ¶ 7 (same); Declaration of Cheyanne Scudday attached hereto as Exhibit 8 ("Scudday Decl.") ¶ 8 (same); Declaration of Tracy Turner attached hereto as Exhibit 9 ("Turner

1    Decl.") ¶ 7 (same); Declaration of Tania Mattson (formerly Callahan) attached hereto as Exhibit

2    10 ("Mattson Decl.") ¶ 8 (same). Accordingly, this Court should find that former employees, or at

3    the very least those former employees who are willing to return to the Wynn, have standing to

4    seek injunctive relief sought by Ms. Kastroll.

5              **2.    Wynn failed to establish by preponderance of the evidence what**
6                      **percentage of former employees reside out of state.**

7              Once former employees are included in the Class, Wynn is out of luck. Wynn attempted to

8    carry its burden of proof by providing several lengthy spreadsheets with purported addresses of its

9    former employees, showing that fewer than 10% of all former employees have moved out of

10   Nevada. (Dkts. 66-68, Exhibits 3-1 through 3-18). However, the addresses listed in the charts are

11   inaccurate and outdated.

12             Indeed, Wynn provided wrong addresses for five out of six former employees who

13   submitted their Declarations in support of this Opposition. *Compare* Trapani Decl. ¶ 1 (Ms.

14   Trapani actually resides in Charleston, South Carolina) *with* Dkt. 68-4, bates WYNN0002378

15   (claiming that Ms. Trapani resides in Mt. Pleasant, South Carolina); *compare* Bell Decl. ¶ 1 (Ms.

16   Bell actually resides in Cadott, Wisconsin) *with* Dkt. 66-8, bates WYNN0002089 (claiming that

17   Ms. Bell lives in Las Vegas, Nevada); *compare* Scudday Decl. ¶ 1 (Mr. Scudday actually resides

18   in Leslie, Michigan) *with* Dkt. 68-3, bates WYNN0002347 (claiming that Mr. Scudday lives in

19   Mason, Michigan); *compare* Mattson Decl. ¶ 1 (Ms. Mattson actually resides in Tavernier,

20   Florida) *with* Dkt. 66-9, bates WYNN0002108 (claiming that Ms. Mattson resides in Las Vegas,

21   Nevada); compare Turner Decl. ¶ 1 (Ms. Turner actually resides in New Town, North Dakota)

22   *with* Dkt. 68-4, bates WYNN0002380 (claiming that Ms. Turner resides in Las Vegas, Nevada).

23             As such, Class members' declarations conclusively show how inaccurate the Wynn records

24   are. Three out of six declarants (Ms. Bell, Ms. Turner and Ms. Mattson) actually reside out of state

25   while Wynn claims them to be Nevadans. Mr. Scudday has moved at least twice since his

26   separation from the Wynn (Scudday Decl. ¶ 6), and Ms. Trapani never informed the Wynn of her

27   actual address out of state to begin with (Trapani Decl. ¶ 5). And in <u>none</u> of their cases has the

28   Wynn produced any evidence regarding its effort to verify the correctness of (and where necessary

1   update) the addresses it has on file for any of them (or for any other former employee). This Court

2   can therefore only guess as to the number of former employees who Wynn now erroneously

3   claims still reside in Nevada.

4        Indeed, Wynn cannot possibly expect that its former employees will faithfully update their

5   addresses with the Wynn HR Department for the rest of their lives. In fact, when asked twice

6   during the deposition what happens if former employees move again *after* having provided their

7   address at the time of their separation from the Wynn, Wynn's 30(b)(6) deponent could not

8   provide an explanation other than that their initial forwarding address is being kept by the HR.

9   Swanson Dep. Tr. 47:22-25, 48:1-23.

10       Wynn's system of keeping track of former employee addresses does not include any pro-

11  active updating of its records. Ms. Swanson testified that at the time of their separation from the

12  Wynn, employees write in their forwarding addresses on a separation clearance form. Swanson

13  Dep. Tr. 40:1-25. But in practice, employees may leave their employment without ever having

14  completed the separation form. In fact, two out of six declarants – former employees of the Wynn

15  – have never filled out a separation clearance form. *See* Bell Decl. ¶ 6; Mattson Decl. ¶ 6. Then,

16  those employees who do fill out the form collect various signatures and finally deliver the form to

17  the payroll department, which keeps these forms. Swanson Dep. Tr. 40:4-25, 41:3-13. However,

18  as Wynn's designee who was supposed to be prepared to testify on the issue of residencies of

19  former employees, Ms. Swanson could not answer or explain how the information from these

20  separation clearance forms is entered into Wynn's address database system, called PeopleSoft.

21  Swanson Dep. Tr. 40:11-13. Ms. Swanson was not sure whether payroll employees do it

22  themselves or deliver the forms to the particular employees in the HR department, or who exactly

23  within the Wynn organization is charged with inputting this information into PeopleSoft. Swanson

24  Dep. Tr. 41:7-13, 47:1-18, 48:15-25, 49:1-2. Moreover, the forms say nothing regarding an intent

25  to stay in or, if leaving, to return to Nevada—leaving the issue of citizenship even more of a

26  mystery.

27

28

Finally, it is undisputed that Nevada still has the highest unemployment rate in the country. Sandra Chereb, *Nevada Jobless Rate Dips Below 12 Percent in April*, BLOOMBERG BUSINESSWEEK (May 18, 2012), http://www.businessweek.com/ ap/2012-05/D9UR8GIG0.htm ("Nevada has led the nation in unemployment since May 2010, and the state jobless rate remains far above the national unemployment rate of 8.1 percent.") Faced with the grim economic reality, many Nevadans have moved and are still moving out of state in hopes of finding employment in California, Utah, and other states. Jean Guerrero, *All Signs Point to Continuing Las Vegas Exodus*, LAS VEGAS SUN (Sept. 2, 2010), http://www.lasvegassun.com/news/2010/sep/02/moving-vegas-not-anymore/. This further undercuts the veracity of Wynn's statistic that only 9% of all of its former employees have moved out of state.

Accordingly, Wynn's claim that 91% of all its former employees still reside in Nevada is at best inaccurate and cannot be relied upon to say that this case meets the rigors of the local controversy exception without the benefit of a trial.

### C.      Wynn's Records Showing Addresses of Current Employees Are Inaccurate and Should Not Be Given Much Weight.

Wynn argues that the overwhelming majority of current employees live in Nevada. (MSJ at 10.) While this in fact could be true, it says nothing of their actual citizenship. Furthermore, Wynn's spreadsheets showing the residencies of its current employees suffer from the same deficiencies as the charts with former employees' addresses. First, Wynn itself admits that a number of current employees do not have any addresses at all listed in its system. (Dkt. 65-1, ¶ 5.) Second, for many full time current employees whose job functions clearly require them to live nearby the casino, Wynn lists addresses far beyond the realm of their daily commute. *See* Dkt. 66-1, bates WYNN0001963 (claiming that Wynn's full time valet attendant resides in New Orleans, Louisiana); Dkt. 66-2, batesWYNN0001988 (claiming that Wynn's full time executive chef lives in Miami, Florida). Ms. Swanson, Wynn's agent with knowledge about residencies of Wynn's employees, had no explanation for such discrepancies when asked at the deposition and offered nothing to indicate the domicile or citizenship of such employees. Swanson Dep. Tr. 31:9-17.

1   Finally, Ms. Swanson testified that if current employees change their address at any time

2   during their employment and do not choose to update their new address with the Wynn's internal

3   system called the Wire, then management will not know these employees' new addresses.

4   Swanson Dep. Tr. 32:17-25. The inference follows that if at any point in their employment any of

5   the Wynn's current employees, especially part time or seasonal employees, moved to neighboring

6   towns in California, Arizona, or Utah and did not update their addresses on the Wire, Wynn's

7   charts would not reflect their out-of-state addresses accurately. Accordingly, Wynn's various

8   charts, which represent the totality of its "evidence" on this issue, are inaccurate and cannot

9   credibly be relied on to find no genuine issues of material fact exist for trial.

10   Therefore, in light of all these deficiencies, because "the party bearing the burden of proof

11   is not entitled to the benefit of the doubt" and because, to the contrary, any doubt about the

12   applicability of the CAFA's home state controversy exception must be resolved against the Wynn,

13   this Court should conclude that current employees' actual residencies likewise remain at issue and

14   deny Wynn's Motion for Summary Judgment.

15   **IV.   CONCLUSION**

16   Wynn's desire to prevent this Court from ruling on the merits of this case is transparent.

17   Fortunately for Plaintiff Kastroll and the putative Class, a major interstate employer cannot hide

18   behind the CAFA exception to avoid jurisdiction of this Court. While the majority of Wynn's

19   employees may have lived in Nevada on the date the Complaint was filed, a significant portion of

20   the putative Class members reside and claim citizenship in another state. Wynn has thus failed to

21   meet its burden of showing by a preponderance of the evidence that more than two thirds of all

22   Class members are Nevadans. Therefore, Plaintiff respectfully requests that this Court deny

23   Wynn's Motion for Summary Judgment in its entirety.

24

25

26

27

28

Dated:  June 11, 2012

Respectfully submitted,

KANIE KASTROLL

By:____/s/ Steven L. Woodrow_____
          One of Plaintiff's Attorneys

George Kelesis
Marc Cook
Bailus Cook & Kelesis
400 S. 4th St.
Suite 300
Las Vegas, NV 89101
Tel: (702) 385-3788
Fax: (702) 737-7712

Jay Edelson (admitted *pro hac vice*)
Steven L. Woodrow (admitted *pro hac vice*)
EDELSON MCGUIRE, LLC
350 N. LaSalle St., Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

1

**CERTIFICATE OF SERVICE**

2

3        I certify that on June 11, 2012, I served the above and foregoing Plaintiff's Opposition to

4    Defendant's Motion for Summary Judgment by causing true and accurate copy of such paper to be

5    filed and transmitted to all parties and attorneys of record via the Court's CM/ECF electronic

     filing system.

6

7                                                      /s/ Marc P. Cook

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28